EUTING, by Guardian *ad litem,* Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*November 12—November 28, 1902.*

*Railroads: Exploding torpedo on track: Injury to bystander: Liability: Scope of engineer's employment: Court and jury.*

1. Upon the evidence in this case it is *held* to have been a question for the jury whether a torpedo placed upon the track in front of an engine was put there by the fireman without the knowledge of the engineer, or by the engineer himself.
2. Railroad torpedoes should, as matter of law, be considered as dangerous agencies.
3. An engineer in whose custody a railway company has placed torpedoes to be used only as signals to trains, who for his own amusement puts one of such torpedoes upon the track in dangerous proximity to third persons, and then moves his engine over it, causing it to explode and injure one of such persons, is not acting beyond the scope of his employment, but is violating a duty resulting from such employment, and the company is responsible for his acts.
4. An engineer who, knowing that a torpedo has been placed upon the track in front of his engine in close proximity to bystanders, moves his engine over it in the course of his employment, is guilty of a negligent act for the proximate result of which the railway company is liable.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This is an action for personal injuries. Many of the facts.

are undisputed. It appears that in May, 1899, the defend-
ant company constructed a temporary spur track along one
of the streets of the city of Kenosha running into a public
park in that city (in which a library building was being con-
structed) for the purpose of delivering materials for the con-
struction of the building; that the track was not fenced; that
on the morning of July 6, 1899, a switch engine operated by
an engineer and fireman ran over said track into the park for
the purpose of pulling a freight car, which had run off the
end of the track, back upon the track; that the engine was at-
tached to the car, and made several attempts to pull it; that
some boys were standing in the park nearby, watching the
operation, and that a delayed celebration of the Fourth of
July was going on; that the plaintiff was one of the boys
thus watching, and that he was about nine years of age; that
either the fireman or the engineer descended from the cab of
the engine, and placed a railroad torpedo on the track about
a foot from one of the driving wheels; that the man who
placed the torpedo on the track immediately got into the cab
again, and the engine was moved over the torpedo, exploding
it; and that a flying piece of metal therefrom buried itself
in plaintiff's leg, inflicting a serious injury; and that the
plaintiff did not know what it was that the man put upon the
track. The engineer testified that he did not place the tor-
pedo on the track, and did not know it was there, and the
fireman testified that he placed the torpedo on the track for
his own amusement, and that the engineer did not direct him
to do so nor know that it was done. On the other hand, testi-
mony was given tending to show that the engineer himself
placed the torpedo on the track.

At the close of the evidence the court directed a verdict for
the defendant, and from judgment thereon the plaintiff ap-
peals.

For the appellant there were briefs by *Baker & Baker,* and
oral argument by *N. L. Baker*. They argued, among other

things, that if the employees of defendant used its torpedoes and engine while entrusted to them for use in its business, for their amusement by negligently running the engine over the torpedoes, causing injury, the defendant would be liable, because the defendant has been negligent in the performance of its duty to guard and safely keep such dangerous appliances. 1 Thompson, Negligence (2d ed.) §§ 522, 523; 2 Shearman & Redf. Negligence (5th ed.) § 683; *Toledo, W. & W. R. Co. v. Harmon,* 47 Ill. 298; *Chicago, B. & Q. R. Co. v. Dickson,* 63 Ill. 151; *Nashville & C. R. Co. v. Starnes,* 9 Heisk. 52, 24 Am. Rep. 296; *Skipper v. Clifton Mfg. Co.* 58 S. C. 143, 36 S. E. 509; *Texas & P. R. Co. v. Scoville,* 62 Fed. 730; *Dinsmoor v. Wolber,* 85 Ill. App. 152; *Ritchie v. Waller,* 63 Conn. 155, 27 L. R. A. 161; *Schaefer v. Osterbrink,* 67 Wis. 495; *Pittsburg, C. & St. L. R. Co. v. Shields,* 47 Ohio St. 387; *Harriman v. P., C. & St. L. R. Co.* 45 Ohio St. 11; *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Bryan v. Adler,* 97 Wis. 124; *Fick v. C. & N. W. R. Co.* 68 Wis. 469.

*Edward M. Hyzer,* for the respondent, cited *Winkler v. Fisher,* 95 Wis. 355; 1 Thompson, Negligence, §§ 526, 527; *Guille v. Campbell,* 200 Pa. St. 119, 55 L. R. A. 111; *Chicago, B. & Q. R. Co. v. Epperson,* 26 Ill. App. 72, 79; *Smith v. L. V. R. Co.* 78 Hun, 630; *Cousins v. H. & St. J. R. Co.* 66 Mo. 572; *Bowler v. O'Connell,* 162 Mass. 319, 27 L. R. A. 173, also note, p. 161. See, also, note in *Missouri, K. & T. R. Co. v. Edwards,* 25 Am. & Eng. R. Cas. (N. S.) 431.

WINSLOW, J. The respondent's contention (which seems to have been adopted by the trial court) is, in brief, that the uncontradicted evidence shows that there was no occasion for the use of the torpedo in the transaction of the defendant's business; that it was placed in the care of the engineer, and the fireman had no authority to take it; that the fireman took it without the knowledge of the engineer, and placed it upon the track for his own amuse-

ment; that in so doing he was entirely outside the scope of his employment, and hence that his principal is not responsible for the results of his act. If this contention were fully justified by the facts it is difficult to see how the conclusion could be avoided. We agree with counsel that the evidence shows that there was no occasion for the use of the torpedo at this time in the transaction of the defendant's business. It is clear that under the rules of the company it was only to be used as a signal to be put on the track when it was desired to stop an approaching train. We also agree that the evidence shows that it was placed in the care of the engineer, and that the fireman had no right to use it, or authority to take it from the engine, save as directed by the engineer. We cannot, however, admit that the uncontradicted evidence proves that the fireman placed the torpedo on the track without the authority or knowledge of the engineer. It is true that the fireman testifies to this effect, and that the engineer denies that he put the torpedo on the track, or knew of its being placed there, but there is evidence on the part of the plaintiff tending directly to show that the engineer himself placed the torpedo on the track. The nature of the evidence was as follows: The plaintiff and his two companions testified that a man jumped from the cab, placed something on the track, the character of which they did not know, and climbed back into the cab, pulled the lever, and started the engine, when the explosion took place. The engineer testified that the fireman did nothing about the operation of the engine, but that he himself pulled the throttle, and started it. Again, the plaintiff at the trial identified the engineer (both fireman and engineer standing before him) as the man who put the torpedo on the track. We regard this evidence as amply sufficient to carry the question to the jury.

So, in considering the motion to direct a verdict, it must be taken as though it were proven that the engineer placed the torpedo on the rail, and moved the engine over it, caus-

ing the explosion; and the question is whether a verdict against the defendant could be sustained upon this state of facts. That railroad torpedoes are, in their nature, dangerous agencies, cannot be doubted. It is common knowledge that they are loaded with some high explosive, and with a sufficient amount thereof to cause a loud explosion; and the danger which exists, even in the explosion of toy torpedoes, is too well understood to admit of doubt that railroad torpedoes should be considered as dangerous agencies as matter of law.

So the situation to be considered upon the motion is this: The defendant placed these dangerous explosives in the custody of its servant, to be placed on the track in certain contingencies as a warning to approaching trains. The servant, however, placed one on the track when not contemplated by the employer, evidently for his own amusement, and in dangerous proximity to third persons, and moved the engine over it, causing it to explode, and inflict injury on one of such persons; and the question is whether a verdict for the injured person against the principal can be sustained under such circumstances. We think this question must be answered in the affirmative. The principle that a master is not responsible for the torts of his servant when the servant has departed from his employment is well understood. If this principle were as easy of application as it is of statement, we should have little difficulty; but, like many another simple and plain principle, its application to concrete facts is sometimes very difficult. The question, generally, is whether the servant has departed from his employment, or whether he has departed from or neglected a duty in the line of that employment. In the first case the principal is not responsible for his acts, and in the second case he is. Applying the principle to the present case, supposing that the jury had found that the engineer placed the torpedo on the track, it seems quite plain that a verdict for the plaintiff might be sustained.

The engineer's duty was to operate the engine; to take care of the torpedoes, and see that they were used only at proper times and places. The company had placed in his charge these dangerous agencies, and authorized him to use them at proper times. In placing one of them upon the track as he did, he was doing what the company had directly authorized him to do; but he was not doing it at the time or place authorized by the master. He was not beyond the scope of his employment, but he was wilfully or wantonly violating a duty resulting from his employment, namely, his duty to safely keep and properly use the torpedoes. There have been many cases involving the application of this principle, and they cannot be said to be entirely harmonious; but the principle above stated is believed to be substantiated by the great weight of authority. The doctrine is quite well stated in *Pittsburgh, C. & St. L. R. Co. v. Shields,* 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, as follows:

"A servant may depart from his employment without making his master liable for his negligence when outside of the employment of his master, and he so departs whenever he goes beyond the scope of his employment and engages in affairs of his own, but he cannot depart from the duty intrusted to him when that duty regards the rights of others in respect to the employment of dangerous instruments by the master in the prosecution of his business, without making the master liable for the consequences; for the first step in that direction is a breach of the duty intrusted to him by the master, and his negligence in this regard becomes the negligence of the master."

The cases upon this subject will be found quite fully cited in the case of *Alsever v. M. & St. L. R. Co.* 115 Iowa, 338, 88 N. W. 841. This was a case where an engineer blew off steam from a blow-off cock solely for the purpose of frightening some children, and one of the children, by reason of her fright, fell, and broke her leg, and it was held that a verdict for the plaintiff could be sustained under the principles herein stated.

There is, however, another view which may be taken of the case as made by the plaintiff's evidence, which also leads to the conclusion that it was a proper case for the jury to pass upon. If it be true as the evidence tends to show that the engineer placed the torpedo on the track, then he knew that a dangerous explosive was on the track immediately in front of the driving wheel at the moment he moved the engine, and that third persons were in close proximity. If, under such circumstances and with that knowledge, he moved his engine in the attempt to pull the car upon the track, the master would unquestionably be liable for injuries to such third persons which were proximately caused by the engineer's negligent act. Upon the plainest principles, the engineer could not, in prosecuting his master's business, move his engine over an obstacle or dangerous place upon the track which was known to him, when such movement was plainly imminently dangerous to third persons, without rendering his master liable for the proximate result of his negligent act. These views necessitate reversal of the judgment.

*By the Court.*—Judgment reversed, and action remanded for a new trial.