OLE SODERLUND v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

October 18, 1907.

Nos. 15,450—(131).

**Master and Servant—Scope of Employment.**

 A crew of six or seven men, including respondent, were engaged in repairing a railway track, and appellant provided handcars for the purpose of going to and from their work. At the time of the accident the other members of the crew propelled the car at such a high rate of speed that respondent lost his hold on the handle bars and fell from the car. There was no necessity for running the car so rapidly, and it was done thoughtlessly, in the spirit of fun, and for their own amusement, although respondent had asked them not to go so fast. *Held*, that in thus negligently overspeeding the car the men were engaged in the performance of their duty to the master, and were not acting without the scope of their authority. The evidence is sufficient to sustain the verdict.

[1] Reported in 113 N. W. 449.

Action in the district court for Goodhue county to recover $2,000 for personal injuries sustained by plaintiff while in the employ of defendant. The case was tried before Holt, J., and a jury, which returned a verdict in favor of plaintiff for $711. From an order denying a motion to set aside the verdict and for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

F. W. Root and Frank M. Wilson, for appellant.

Johnson, Mohn & Mohn, for respondent.

LEWIS, J.

Appellant company was engaged in repairing its main track of railway between Lake City and a point about three miles distant. From sixteen to eighteen men were engaged in this work under the charge of a foreman. The men boarded at Lake City, and handcars were provided by the company for their use in going to and from the work. Respondent was sixty nine years old, had been in appellant's employ for the period of sixteen years, was familiar with the method of repairing railroad tracks, and had had large experience in riding upon and in propelling handcars. At the time of the accident the crew of men engaged in repairing the track left Lake City on handcars for the purpose of returning to their work. The foreman and a part of the crew were riding on the first car, and respondent, with five or six other men, were riding on the second car. Respondent and one other man stood on the front end of the car with their backs to the front of it, three of the men stood on the rear end of the car facing the direction in which they were going, and the other two men stood on either side of the handle bars. The usual speed taken in making the distance was at about the rate of sixteen miles an hour. The crew on the second car having dropped some distance behind the first car, some one on it suggested they should hurry, and so they began to pump faster and gradually increased the speed. What then occurred was described by respondent as follows:

> Then the boys on my car began to pump as much as they could, and the car was running so that the dust was flying around us and I couldn't follow up with the pumping. I had to change hands, and I hollered to them that they mustn't pump so fast, and then they only laughed at me, and pumped the

harder, and ran the handcar so fast that I couldn't stand it,. and in the act of changing hands I fell off backwards, and. struck on my head and arm, and the car passed over me. I became unconscious, and the next thing I remember I was in my house and the doctor was there.

Respondent recovered a verdict in the court below upon the ground that the handcar was operated by respondent's co-employees at such an excessive and dangerous rate of speed as to cause respondent to lose his balance and fall from the car.

Upon this question the evidence is sufficient to support the verdict. The other members of the crew, being young and vigorous men, were able to propel the car at great speed and still retain their hold on the handle bars. Knowing respondent's age, and having been warned by him that they were going too fast for him, and knowing it was difficult for him to change his position while the car was progressing at such a high rate of speed, they conducted themselves in a reckless manner, to say the least, with respect to the safety of their associate in speeding the car "just for fun." We do not consider that the crew in charge of the handcar were acting without the scope of their authority for purposes of their own, and not in the interest of the master. While the customary rate of speed was fifteen or sixteen miles, an hour, and they were not required to propel the car at any greater rate in the interest of the master's employment, and they attained the high rate of speed on this occasion from motives of pure thoughtlessness, merely for the purpose of "having a little fun with the old gentleman," yet they were engaged in propelling the car furnished for the purpose of conveying them to and from their place of work. The distinction between this case and that of Kincade v. Chicago, 107 Iowa,. 682, 78 N. W. 698, is apparent. In that case the act of the co-employee in striking the plaintiff's partner was wholly outside of, and not in pursuance of the performance of, any duty of the master. Here, however, the co-servants are charged with negligently performing the very act which it was their duty to perform, viz., propel the car, and that in overspeeding it they negligently conducted the master's business. Crandall v. Boutell, 95 Minn. 114, 103 N. W. 890; Merrill v. Coates, 101 Minn. 43, 111 N. W. 836; 2 Thompson, Neg. § 1910;.

Euting v. Chicago, 116 Wis. 13, 92 N. W. 358, 60 L. R. A. 158, 96 Am. St. 936; Cohen v. Dry Dock, 69 N. Y. 170.

Affirmed.