RATCLIFFE, Respondent, vs. CHICAGO, MILWAUKEE & ST.
PAUL RAILWAY COMPANY, Appellant.

*April 8—April 29, 1913.*

*Master and servant: Injury to third person: Unauthorized act of
agent: Scope of employment: Railroads.*

1. When a servant is engaged in the performance of a duty dele-
gated to him by the master, his tortious acts within the scope
of his employment, though unlawful, unauthorized, or even
forbidden, are binding upon the master.
2. A switch through which, under a contract with defendant, the
trains of another railway company entered upon the main line
of defendant's road was out of repair, and a section man in
defendant's employ had been left in charge of it with direc-
tions to wait for an expected train on defendant's road. If a
train of the other company came while he was there, he was
to open the switch and let that train pass upon defendant's
track. He opened the switch to see if the connection rod was
broken, and while it was so open a train on defendant's road
ran through it and upon the track of the other company, where
it struck an engine of the other company and injured the en-
gineer. *Held,* that such act of the section man was within the
scope of his employment, and that defendant is liable for the
injury.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries
alleged to have been caused on November 15, 1910, by the
negligence of the defendant. The defendant denied the ma-
terial allegations of the complaint. The jury returned the
following verdict:

"(1) Was the plaintiff injured at the time and place al-
leged in the complaint? *A.* (by the court). Yes.

"(2) Was such injury caused by the negligence of the
employees of the defendant company or any of them?
*A.* Yes.

"(3) If you answer the second question 'Yes,' then was
such negligence the proximate cause of the plaintiff's injury?
*A.* Yes.

"(4) Did Foreman Schmidt spike the switch before leaving it in the morning in question?  A. No.

"(5) If you answer the fourth question 'Yes,' was Eberling instructed to pull the spikes for the Soo train but not to throw or open the switch?  A. ——.

"(6) Was Eberling performing an act in the line of his duty to the defendant in opening the switch in question? A. No.

"(7) If the plaintiff is entitled to recover, at what sum do you assess his damages?  A. $1,525."

On motion of the plaintiff the court below changed the answer to the sixth question of the verdict from "No" to "Yes." Judgment was entered for the plaintiff accordingly, from which this appeal was taken.

For the appellant there was a brief by *C. H. Van Alstine* and *H. J. Killilea,* and oral argument by *Mr. Van Alstine.*

For the respondent there was a brief by *Stewart & McDonald,* and oral argument by *Frank Stewart.*

KERWIN, J.  The contention of the appellant for reversal is that at the close of the evidence the court below should have directed a verdict for the defendant on the ground that the undisputed evidence showed that when Eberling opened the switch, which act caused the injury, he was not acting within the scope of his employment; and further that the court erred in changing the answer to the sixth question from "No" to "Yes." It is contended by appellant that unless the court below could say as matter of law that Eberling was not acting beyond the scope of his employment when he opened the switch, the finding of the jury on that question should not have been disturbed.

It appears from the evidence that the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, hereafter called the Soo, under a contract with the defendant was using the defendant's track from Rugby Junction to Milwaukee; that the trains of the Soo passed from its track to the track of the

defendant over a connecting track between 400 and 500 feet long; that trains from this connecting track enter upon the main line of defendant's road through a switch, the key to which was in the possession of the employees of the Soo road. The charge of negligence is that the defendant negligently and carelessly ran one of its trains from the main track of defendant in and upon said connecting track upon which the locomotive operated by plaintiff was standing with such force as to injure the plaintiff. The particular negligence complained of is that one Richard Eberling, a section man in the employ of defendant, opened the switch leading from the main line to the connecting track.

The defendant claims that in opening the switch in question Eberling was acting outside of the scope of his employment, therefore the defendant was not responsible for his acts in that regard. The undisputed evidence shows that the switch in question was out of repair and the section foreman of defendant, John Schmidt, with two other section men, Kraus and Eberling, in the discharge of their duties for defendant, went to Rugby Junction to repair it; that it was discovered that the lock of the switch was broken or lost and Eberling was left to watch the switch, the foreman and Kraus going away; that Eberling was instructed by the foreman to remain in charge of the switch until an expected train on defendant's road had arrived, then go to Richfield, procure a switch lock, and lock the switch; that it was the duty of Eberling, in case a Soo train came while he was there, to pull the spikes so the switch could be thrown and let the Soo train onto defendant's track, and, after the Soo train passed, drive the spikes back so as to hold the switch point to the main track; that the switch lock being broken or lost, the point was spiked, and when the point is spiked the switch cannot move; that while Eberling was thus in charge of the switch he thought the connection rod was broken and turned the switch to look at it and found it all right; that when so turned the

main track of defendant's line leads onto the Soo track, and while so opened the defendant's train came and ran onto the Soo track and caused the injury. The foreman told Eberling to stay there and look out for the switch and when train No. 22 arrived to go to Richfield, get a switch lock, and lock the switch. The switch had been spiked to the main track and the spikes were taken out to fix the switch. The evidence is conflicting as to whether the switch had been spiked to the main track after the repairs had been made and before the foreman, Schmidt, and Kraus left. The jury found, as appears from the fourth finding, that it had not.

It further appears from the evidence that the contract between the Soo and the defendant respecting the use of the defendant's track provides in substance that the Soo shall at its own expense maintain the connections of its tracks with the tracks of the defendant at Rugby Junction and require its employees to turn the switches connecting said tracks on defendant's tracks whenever its engines or cars have passed over said switches and save the defendant harmless from all loss which it may suffer on account of accidents caused by the misplacement of switches by the agents or employees of the Soo. This contract, however, is not important as bearing upon the instant case, because the defendant undertook through its agents to repair the switch, and through the negligence of the defendant's agent while so in charge of the switch the injury was caused.

It is argued by counsel for appellant that the evidence shows without dispute that neither the defendant nor Eberling owed any duty to the plaintiff in this case to open or close the switch, and that when Eberling opened the switch he stepped aside from his duty and acted beyond the scope of his employment, hence the master is not liable, on the authority of *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304; *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276; *Steffen v. McNaughton,* 142 Wis. 49, 124 N. W. 1016; and some cases from other jurisdictions. The question has been so often and fully

treated by this court that it is unnecessary to go elsewhere for authority.

It is said by counsel for appellant that in opening the switch Eberling was a mere volunteer and the act one outside of the scope of his employment. It is true the rule is well settled that when an agent acts outside the scope of his employment his acts are not binding upon his principal. But it is not always easy to determine what acts are and what are not within the scope of employment. Whether the acts of a servant are within the scope of his employment is ordinarily a question for the jury. But when the facts are undisputed and no conflicting inferences can be drawn from the evidence, then the question becomes one of law.

In the instant case, from the undisputed evidence it appears that Eberling did not depart from his employment, but merely departed from or neglected a duty within the scope of his employment, and therefore his master was liable for his acts. *Fireman's Fund Ins. Co. v. Schreiber,* 150 Wis. 42, 135 N. W. 507; *Euting v. C. & N. W. R. Co.* 116 Wis. 13, 92 N. W. 358; *Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 110 N. W. 424; *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304; *Fick v. C. & N. W. R. Co.* 68 Wis. 469, 32 N. W. 527. It is well settled that when a servant is engaged in the performance of a duty delegated to him by the master, his tortious acts within the scope of his employment, though unlawful, unauthorized, or even forbidden, are binding upon his master. *Johnston v. C., St. P., M. & O. R. Co., supra,* and cases there cited; *Bergman v. Hendrickson, supra.*

Eberling was an employee of the defendant, acting in the performance of his master's duty, within the scope of his employment, and attempting to perform a duty for the master, and even though he improperly performed that duty, or violated instructions in the performance of it, still the master is liable for his acts.

No other questions require treatment.

*By the Court.*—The judgment is affirmed.