OAKES, by guardian *ad litem,* Respondent, vs. MARSHALL-
,WELLS HARDWARE COMPANY, Appellant.

*May 21—October 6, 1914.*

*Principal and agent: Negligence: Injury to third person: Scope of
employment: Evidence: Direction of verdict.*

Where a traveling salesman employed by defendant to solicit. or-
ders for firearms and ammunition, while shooting with a rifle
which he carried as a sample, negligently shot the plaintiff,
the testimony of the salesman that he was shooting for pastime
only, together with that of defendant's sales manager that the
salesman was not expected or required to demonstrate guns,
raised a presumption that while shooting he was acting out-
side the scope of his employment; and that presumption not
having been rebutted, but rather confirmed, by the other evi-
dence, a verdict for defendant should have been directed.

APPEAL from a judgment of the superior court of Douglas
county: CHARLES SMITH, Judge. *Reversed.*

Action for personal injury. On August 6, 1912, the
plaintiff was injured by a bullet from a twenty-two caliber
Stevens rifle found by the jury to have been negligently fired
by the defendant Trokey, who was at the time a traveling
salesman in the employ of the defendant *Marshall-Wells
Hardware Company.* The jury also found, as construed by
the trial court, that at the time the shot was fired the defend-
ant Trokey was acting within the scope of his employment
and was discharging the rifle for the purpose of demonstrat-
ing its shooting qualities to prospective purchasers or for the
purpose of furthering the sale of the rifle or the interests of
his employer. Judgment for $2,100 was entered against
both defendants and the defendant *Marshall-Wells Hardware
Company* appealed.

For the appellant there was a brief by *Luse, Powell &
Luse,* attorneys, and *Washburn, Bailey & Mitchell,* of coun-
sel, and oral argument by *L. K. Luse.*

*W. P. Crawford,* for the respondent.

The following opinion was filed June 17, 1914:

VINJE, J.    The evidence most favorable to the plaintiff tends to establish these facts: On August 6, 1912, the defendant Trokey, who was then in the employ of the defendant *Marshall-Wells Hardware Company* as a traveling salesman, visited the village of Brule for the purpose of soliciting orders for his house, including orders for firearms and ammunition, carrying with him a sample twenty-two caliber Stevens rifle. About ten minutes after 10 o'clock in the forenoon he went to the hardware store of one Christ Lustig, to whom he had previously sold goods.    He waited in the store about fifteen minutes for a chance to transact business with Mr. Lustig, who was during that time busy with customers.    After waiting for this length of time Trokey bought a box of cartridges at Lustig's store, went out into the back yard of the store building, and engaged in shooting with the sample rifle which he carried.    Part of the time Charles Lustig, a son of the hardware merchant and about seventeen years of age, who acted as a clerk and general helper in his father's store, went out of the store and did some shooting with Trokey.    Some shooting was also done by a Mr. Ingalls, another traveling salesman, who was in Brule that day.    The shooting was more or less continuous from the time it began until the time of the accident, which occurred about ten minutes to 1 in the afternoon.    At that time the plaintiff, who was standing near the pump close by his house a distance of somewhat over 100 feet from Mr. Lustig's store, was struck by a bullet in the left side.    Some of the shooting was done from behind Mr. Lustig's store, some from the front of Wyant's saloon near by, and some from the road running north and south, east of Wyant's saloon.    The fact that plaintiff was injured was not known to any one who participated in the shooting until a short time afterwards.    Among the different objects

shot at were a target, a telephone post, birds in the road and on the roof of Mr. Lustig's store, and pigeons while flying in the air near by.   Charles Lustig went to the depot for a box of candy about twenty minutes before 1 o'clock and had not done any shooting for from fifteen to twenty minutes before he went to the depot for the candy.   The evidence is a little conflicting as to whether Mr. Trokey was shooting alone about the time plaintiff was injured or whether Mr. Ingalls was with him at the time.   There is no conflict in the evidence to the effect that Charles Lustig had not been with him for upwards of half an hour before plaintiff was injured, though there is some testimony to the effect that he went out and fired one or two shots after he returned from the depot with the box of candy, which would be about the time plaintiff was injured.   Appellant, however, concedes that there is evidence in the case sufficient to sustain the finding of the jury that the bullet which injured plaintiff was fired by Trokey.   There is also evidence in the case that about two weeks previous to the time of the accident Trokey was in Brule for the purpose of soliciting orders for the defendant *Marshall-Wells Hardware Company;* that at that time he showed his sample rifle; that he and Christ Lustig went out in front of the store and shot at a telephone post; that Mr. Lustig also shot at a pile of brick.   At that time the gun was also fired by Charles Lustig and by a man by the name of Winse; that Trokey at that time exhibited the rifle for the purpose of showing its shooting qualities and asked Mr. Lustig for an order for rifles, but that Mr. Lustig refused to buy any because when he tried the gun he did not hit a piece of paper on the telephone post that he shot at. On the day of the accident Lustig ordered some ammunition from Trokey and also gave him a special order for a rifle that was wanted by one of his customers.   On behalf of the defendants, Trokey testified that he was shooting the gun only as a pastime on the day of the accident and that he was not

shooting it with any purpose of endeavoring to sell the gun. The sales manager of the defendant *Marshall-Wells Hardware Company* testified that their traveling men are not expected to demonstrate firearms; that they are not supplied with cartridges and do not carry them with them; and that it was not any part of Mr. Trokey's duty toward the house to fire the gun.

A number of errors are assigned relating to the admission of evidence and the failure to submit the real issue to the jury as well as the error in refusing to direct a verdict in favor of appellant. We shall consider only the latter. In so doing we shall bear in mind that the testimony of Trokey to the effect that he was shooting for pastime only and the testimony of the sales manager that Trokey was not expected or required to demonstrate guns is not controlling upon the question of whether or not he was acting within the scope of his employment while shooting. If the facts and circumstances surrounding the shooting fairly rebut such testimony the jury might well find that it was not true. Or it might find that he was acting within the scope of his employment even though disobeying orders from his employer. *Ratcliffe v. C., M. & St. P. R. Co.* 153 Wis. 281, 141 N. W. 229. But the testimony cannot be disregarded entirely, and it raises the presumption that Trokey while shooting was acting outside the scope of his employment, which presumption must be overcome by facts and circumstances shown by the evidence in order to entitle plaintiff to recover. *Johnson v. Ætna L. Ins. Co., ante,* p. 56, 147 N. W. 32. Does the evidence rebut the presumption that the shooting was for pastime only? When it is considered that Christ Lustig did not participate in the shooting, did not observe it, and was not informed as to its result; that Charles Lustig was only a seventeen-year-old boy who helped his father in the hardware business but was not shown to have any authority to buy goods; that Ingalls and Wyant had no interest as prospective

purchasers; that the shooting was desultory and apparently directed at any available object that offered itself as a target,—the evidence, to our minds, not only fails to refute the testimony that the shooting was for pastime merely, but serves to confirm it.    Especially is this so when it is remembered that at the time it is claimed plaintiff was injured Trokey was shooting either alone or in company with Ingalls. Charles Lustig, even if considered as a prospective purchaser, had quit shooting fifteen or twenty minutes before and had gone to the depot for a box of candy.    Even if there were some foundation for the claim that Trokey shot to demonstrate the gun when Charles Lustig was there, it cannot be said that he did so after Charles had been gone for from fifteen to twenty minutes, and when he was either alone or with Mr. Ingalls, who was confessedly not a prospective buyer. At that time the evidence shows conclusively he was shooting for his own amusement, and that the shot which hit plaintiff, if fired by Trokey, was not done within the scope of his employment.    Plaintiff's evidence, also, we think, standing by itself, shows quite conclusively that the shooting which took place there that morning was indulged in by all who took part in it as a pastime merely; and that it was not carried on at that time by Trokey for the purpose of furthering the business of the *Marshall-Wells Hardware Company*.    Reinforced as it was by the testimony of the defense, the court should have directed a verdict in favor of the appellant as requested.

*By the Court*.—Judgment reversed as to the appellant, *Marshall-Wells Hardware Company*, and cause remanded with directions to dismiss the action as to it.

A motion for a rehearing was denied, with $25 costs, on October 6, 1914.