Johnson, J.
Under the circumstances of this case was the injured infant entitled to invoke the rule respondeat superior ? The answer to this question disposes of the entire case.
The trial court having sustained the motion for a directed verdict at the close of plaintiff’s testi *78 mony, it is elementary that every material fact which plaintiff’s evidence tended to prove must be taken as proven. The essential facts shown are that the driver of the defendant’s truck, who was accompanied by a helper, was driving westerly in Euclid avenue about 7:30 in the evening. He had made his last delivery and in obedience to instructions from the company was then taking the truck by direct route to the garage to be stored for the night. At a crossing of the avenue, known as Quarry Track, plaintiff and a companion asked permission to ride, which the driver gave them. This was in violation of the driver’s express instructions. They got on the running board, the plaintiff standing near the driver, on the left side, holding on to the wind-shield and seat. While in this position the driver increased the speed of the truck to some thirty-five miles an hour. He overtook a touring car ahead of him, which had passed him a short time before, going in the same direction. Without slacking his speed he turned his truck on to the wrong side, the'south side, of the road, directly in the course of and meeting a horse and wagon, which was being driven easterly. The horse and wagon were rightfully and properly near the curb on the south side. The truck struck and crushed the wagon, caught and jammed the boy and seriously injured him. The speed of the truck and its position on the street are conceded to have been in violation of statute and of an ordinance of the city.
The doctrine respondeat superior had its origin in considerations of public policy. Out of the *79 necessities of new social and economic conditions it has been developed and extended; and its growth and application have been influenced and directed by these conditions. The rule itself, and its development, is an example of the process by which the judgment of society as to what is necessary to the public welfare has from time to time been expressed in juristic forms. In the early times some authorities expressed doubt as to whether it could be invoked against corporations, and for a long time its proper application in cases of wilful, malicious or wanton injury was denied. But in the presence of the requirements of the countless activities and changed methods in modern enterprises these limitations are no longer asserted and have not been for many years.
It is a fundamental principle that in order to create a liability in a principal for the acts of an agent, the acts complained of must have been committed while the servant was acting within the scope of his employment. It must be shown, first, that the agent was at the time engaged in serving his principal; second, that the act complained of was within the scope of the agent’s employment; and even if this is shown it must also appear that the agent in doing the act complained of violated some duty that the defendant owed to the plaintiff at the time. The law holds the master for what the servant does or omits in conducting the master’s business, because the master has voluntarily substituted the management and supervision of the servant for his own. For the purpose of this hearing plaintiff in error concedes that the driver of *80 its truck, while taking it to the garage in obedience to instructions, violated the statute and the ordinance of the city in the manner set forth; that his conduct was wilful and wanton and was the cause of the collision with the horse and wagon. But plaintiff in error contends that when the driver gave permission to the boys to ride on the truck he stepped outside the scope of his employment and completely severed the relationship of principal and agent so far as the plaintiff is concerned, and that anything he did thereafter, so far as the plaintiff is concerned, would in no way create a liability upon the principal, though the acts were negligent or wilful.
No defense is made for the conduct of the driver in connection with the entire matter. But the company contends that in granting permission to the boys to ride he had no authority to do so. That is conceded. The grant of permission, so far as the company is concerned, was a mere nullity. The violation by the driver of his instructions in this respect affected the right of the plaintiff to be upon the truck. The most that can be said is that he had no such right, and that when he got upon the truck he was a trespasser, so far as the defendant company was concerned. But if it be conceded that he was on the truck as a trespasser, it must also be conceded that he was entitled to the rights of a trespasser. After that situation was created, and while it existed, if the driver with full knowledge of it, acting in the course of his employment and within the scope of his employment, was guilty of wilful and wanton conduct, *81 which was the proximate cause of injury to the plaintiff, the defendant is liable.
Now, were the wilful and wanton acts of the driver done within the course of his employment and within the scope thereof? Let us test it with reference to the owner of the horse and wagon. The driver taking the truck over the direct route to the garage in obedience to instructions runs it in violation of the statute and of the ordinance and collides with and injures the horse and wagon, whose driver was without fault. We apprehend there would be no question that the company would be liable to the owner of the horse and wagon. Why? Because the driver while in the scope of his employment violated a duty which the company owed to the owner of the wagon, that is, the duty to exercise ordinary care to avoid injuring his property. No one would say that the fact that the company had instructed the driver to exercise ordinary care and not to operate the truck in violation of law (if it had done so) would relieve it of liability. Such a view would nullify the rule respondeat superior. So here, while the plaintiff is upon the truck as a trespasser, with the rights of a trespasser, the same wanton and wilful conduct, the same violation of the statute and the ordinance, is the proximate cause of his injury. The difference between the. two is that in the case of the owner of the wagon the defendant had the affirmative duty to exercise ordinary care to avoid injury to him and his property; while as to the plaintiff trespasser the defendant had the negative duty *82 not to injure him by its wanton and wilful conduct.
In The Cleveland Terminal & Valley Rd. Co. v. Marsh, 63 Ohio St., 236, it is said at page 245: “A trespasser who is upon the company’s premises wrongfully, and a mere volunteer, stand upon substantially the same footing, and are entitled to recover only for such negligence as occurs after the servants of the company discover their perilous, situation, that is for wilful or intentional injury.”
In The B. & O. S. W. Ry. Co. v. Cox, Admx., 66 Ohio St., 276, it is held in the syllabus: “An action to recover for an injury occasioned by negligence, the element of wilfulness being absent, will not lie unless there exists between the defendant and the person injured a relation out of which there arises a duty of the former to exercise care toward the latter.” These and other Ohio cases are merely the statement of a rule everywhere approved. See Powers v. Harlow, 53 Mich., 507, per Judge Cooley.
Quite a number of authorities are cited by the plaintiff in error in which recovery was denied, but an examination of them discloses that none of them rested the claim of liability on the wilful and wanton conduct of the defendant. The plaintiff’s claim in each case rested on the failure to exercise ordinarj'- care.
In Driscoll v. Scanlon, 165 Mass., 348, much relied on, the driver invited the boy on the wagon and allowed the boy to drive while he himself went to sleep. In managing the lines the boy lost his *83 balance and fell under the wagon. No act of the driver brought about the fall of the boy.
In Schulwitz v. Delta Lumber Co., 126 Mich., 559, the boy got on the wagon of defendant after it was unloaded and held on to an upright pole. As the wagon passed over rough places the pole was jogged out of its socket and plaintiff fell from the wagon. Recovery was sought because of the negligence of the teamster in permitting the boy to ride, but no wilful or wanton act of the driver brought about the injury.
In Collins v. City of Chicago et al., 187 Ill. App., 30, plaintiff was permitted by the driver to ride on the rear step of defendant’s ice wagon, following which was another horse and ice wagon of the company. Collins was thrown from the wagon because of a jar on one of the wheels and was injured by the second wTagon. He based his action on negligence. The second proposition of the syllabus reads: “Where a person injured while riding on a wagon is a trespasser, the owner of the vehicle owes no duty to him other than to not injure him wantonly or wilfully.”
In Foster-Herbert Cut Stone Co. v. Pugh, 115 Tenn., 688 (91 S. W. Rep., 199), also much relied on, the plaintiff, with other boys, boarded the stone wagon on the invitation of the driver. The court say: “After riding a short distance they began one after another to dismount, and in undertaking to do likewise the deceased either fell or jumped to the ground between the wheels.”' The action was one for negligence. It will be noted that no act of the driver caused the injury. It must be remem *84 bered that this is not a suit for lack of ordinary care, but is based on wanton and wilful acts which caused the injury.
No case has been called to our attention which holds that the mere giving of unauthorized permission by a driver to an infant relieved the employer from liability for wilful and reckless acts of the employe, which were done in the course and scope of his employment, and which were the proximate cause of injury.
In Chicago, Milwaukee & St. Paul Ry. Co. v. West. 125 Ill., 320, it is held in the syllabus: “But where the engineer invites a boy of the age of seven years to ride on his engine, without authority, or in violation of his duty, and then directs the boy to get off while the engine is in motion, and the latter is injured in getting off, the company will be liable for the injury. It is negligent conduct in the engineer to direct a child of that age to -get off while the engine is in motion, for which the company is liable in case of a personal injury caused thereby.”
In Enright v. Pittsburg Junction Rd. Co., 198 Pa. St., 166, it is held: “A child of tender years, who while trespassing on a freight train is frightened by the shouts and threatening action of a brakeman, while in the discharge of his duties, so that he jumps from the train while it is in rapid motion, and is injured, may recover damages from the railroad company for the injuries sustained.” The court say, at page 170: “The boy was not injured by reason of the dangerous position in which he placed himself, but because of the careless and *85 reckless act of the brakeman in causing him to alight while the train was in motion. The cause of the boy’s injury, therefore, is directly attributable to the negligent act of the defendant’s employee in frightening him so that he attempted to quit the train in the face of imminent danger.” The court say further, at page 169: “If the position assumed by the court and urged by the appellee’s counsel be correct, then a railroad company owes no duty whatever to a person of any age who enters upon one of its trains as a trespasser. The company under such circumstances may with impunity at any time eject a person from a train at the peril of' life and limb. * * * The child of tender years, whose discretion cannot protect him, as in this case, who has entered its train with the knowledge and without 'objection of the brakeman, may be cast from the train with impunity while its rapid speed insures the greatest danger. * * * We cannot assent to a doctrine fraught with so much danger to the public and with so little regard for the rights of the individual.” See also Lovejoy v. D. & R. G. Rd. Co., 59 Col., 222; Euting v. C. & N. W. Ry. Co., 116 Wis., 13; Nudelman v. Borden’s Condensed Milk Co., 136 N. Y. Supp., 49; G., H. & S. A. Ry. Co. v. Zantzinger et al., 93 Tex., 64, and Bucci v. Waterman, 25 R. I., 125.
In certifying this case to this court the court of appeals states in its entry that it finds the judgment is in conflict with the judgment of the court of appeals of the eighth appellate district in the case of The Goff-Kirby Coal Co. v. Skufca (9 Ohio App., 177). After the judgment in the Skufca case in *86 the court of appeals, a motion was filed in this court to require the cause to be certified here for final determination, on the ground that it was a case of public and great general interest. That motion was overruled.
While the reason of the overruling of the motion does not appear, the entry of the court of appeals in that case shows that that court reversed the judgment in favor of the plaintiff in the trial court “because it is contrary to law and against the weight of the evidence.”
In resisting the motion counsel for defendant in that case invoked the application of Rule XIX of this court, which provides that in cases in which the judgment of the court of appeals reverses the judgment of the court of common-pleas wholly or partly on the ground that such judgment is not sustained by sufficient evidence, a motion to affirm such judgment forthwith shall be entertained.
The record in that case also disclosed that in his charge the trial court instructed the jury as follows: “When a boy such as the plaintiff is found upon that wagon without the permission of the Company, a duty arises on the part of the Company, acting through its driver, to exercise ordinary care to allow him to alight safely from that wagon. * * * If you find that the driver knew Joseph Skufca was upon his wagon, then I say to you that when the driver is requested by the plaintiff to permit him to alight or get off the wagon, it is the diity of such driver, and such duty devolves upon the Company which he represents, to exercise or *87 dinary care * * * to permit the boy to alight safely.”
The boy in that case was on the wagon by the invitation of the driver and had requested to be allowed to get off. The. driver paid no attention to him and in attempting to get off by himself the boy was injured.
After reciting that the boy was on the wagon by the unauthorized invitation of the driver, and that he was a trespasser, counsel for the company in that case say in their brief: “The defendant, on the other hand, maintained that under these circumstances the only legal duty it owed the plaintiff was to refrain from wilfully or purposely injuring him.” Defendant’s counsel in that case further say in their brief: “Counsel assume that this boy, while on the wagon, was in a place of danger. The opinion of the court of appeals shows conclusively that while upon the wagon he was in no danger whatever. His attempt to dismount from the wagon, before it could be brought to a stop, was the proximate cause of his injury, and was his own act, unknown to the driver of the wagon.”
Now, if it be conceded that in this case, as in that, the boy was a trespasser, it is clear that while upon the truck he was not in any danger whatever until the subsequent wanton and wilful acts of the driver created the danger and injured him.
The authorities are uniform in holding that to constitute wilful or wanton negligence it is not necessary to show ill-will toward the person injured, but an entire absence of care for the life, person or property of others which exhibits in *88 difference to consequences makes a case of constructive or legal wilfulness. A complete indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence. Many cases sustain this general proposition, among which are Heidenreich v. Bremner, Jr., et al., 260 Ill., 439; Bolin v. C., St. P., M. & O. Ry. Co., 108 Wis., 333; L., N. A. & C. Ry. Co. v. Bryan, 107 Ind., 51, and Freeman v. United Fruit Co., 223 Mass., 300.
In Aiken v. Holyoke Street Ry. Co., 184 Mass., 269, an infant got upon the lower step of the forward end of a street car and was in that position when the car was going around the curve from one street to another. The child did not intend to become a passenger. He was stealing a ride and was a mere trespasser. He called to the motorman to let him off. The motorman saw and heard him, but turned on the power in a reckless fashion and threw the plaintiff from the car. In holding the company liable the court say, at page 271: “The law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a wilful and intentional wrong.”
It is different when goods are carried by the servant without authority. There is no rule imposing duty on the employer in that case. In this case there is the personal relation, and the wilful and wanton conduct of the driver was the proximate cause of the injury. It is well settled that the *89 question as to what is a proximate cause is to be answered by ascertaining the direct, active, efficient cause, as distinguished from a remote cause, in producing the result.
The unauthorized consent to ride was given more than half a mile from the scene of injury. It was a mere incident and had nothing to do with the collision. Otherwise no trespasser could recover under any circumstances at any place. A different view leads to illogical and intolerable conclusions — that is to say, the lack of authority in the driver to consent makes the child a trespasser, though he may not have known of such lack, and we then change to the other edge of the sword and cut off even the rights of a trespasser because of the consent.
By that process the child has less right when he asks permission to ride than if he heedlessfy jumps on without permission. Such a rule would put a premium on fraud. A driver who had wantonly injured a child could assert that he had in violation of his authority and his instructions invited the child to ride, and in such case the law would leave the unsuspecting child to the mercy of the wanton and unlawful conduct of the driver.
As said in 18 Ruling Case Law, 798, “If the servant’s disobedience of instructions will exonerate the master, the proof, easily made, virtually does away with the maxim of respondeat superior, designed for the protection of innocent third persons, and obliging the principal to be careful in the employment of agents, to whom he entrusts the means of committing an injury.”
*90 An automobile cannot be said to be a dangerous instrumentality when properly and carefully operated. But it is designed for use in busy thoroughfares and congested districts, and when operated recklessly it is dangerous and destructive. This fact is pressed upon the common knowledge ■ by constant observation and experience. Legislatures and courts have it steadily called to their attention.
When an employer places such an instrumentality in the possession and control of an employe in the conduct of his business, and voluntarily substitutes the management and supervision of the employe for his own, the law holds him for what the employe does while using the instrumentality in the course and scope of his employment. Qui facit per alium, facit per se. This is the rationale of the doctrine respondeat superior. And we hold in this case that when the young boy clinging to the running board of the truck in a precarious position, of which the driver had knowledge, was injured by the wanton and reckless acts of the driver, while in the course and scope of his employment, the employer is liable.
The simple violation of a statute or ordinance does not of itself constitute wilful and wanton negligence. The question whether there was such negligence, and, if so, whether it was the proximate cause of injury in a particular case, is one to be determined by the jury in the light of all the facts and circumstances shown by the evidence. But as already stated, in the consideration of the action of the trial court in sustaining the motion *91 of the defendant for a directed verdict at the close of the plaintiff’s evidence, all of the facts which the plaintiff’s evidence tended to prove must be taken as established. The motion for a directed verdict should have been overruled, and the cause submitted to the jury, after opportunity given the defendant to introduce his testimony.
' The judgment will be affirmed.

Judgment affirmed.

Nici-iols, C. J., Matthias, Robinson and Merrell, JJ., concur.