ELLEN L. MERRILL v. JOHN COATES.[1]

May 3, 1907.

Nos. 15,127—(67).

**Tort of Servant.**

The proprietor of a saloon is liable in damages for the death of a per-
son occasioned by an assault committed by the bartender while engaged
in ejecting the party from the saloon.

**Same—Evidence.**

In an action to recover damages for such an injury, it is *held* that the
evidence was sufficient to justify the jury in finding that the bartender as-
saulted the deceased, in order to injure him and thus make it easier and
less dangerous to eject him from the saloon.

**Appeal—Failure to Object to Question.**

When an improper question is asked a witness by a trial judge, it is
the duty of counsel to interpose an objection, and a failure to do so is a
waiver of the right to subsequently take advantage of the error.

[1]Reported in 111 N. W. 836.

**Harmless Error.**
> Certain rulings upon the question of the introduction of evidence considered, and *held* not prejudicial.

Action in the district court for Crow Wing county by plaintiff as administratrix of the estate of Truman D. Merrill, deceased, to recover $5,000 for the death of decedent. The case was tried before Spooner, J., and a jury, which rendered a verdict in favor of the plaintiff for $2,061.60. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. E. Ryan, Daniel W. Lawler,* and *D. F. Lyons,* for appellant.

*Geo. W. Peterson* and *A. D. Polk,* for respondent.

ELLIOTT, J.

On November 15, 1905, the appellant was the proprietor of a liquor store at Brainerd, Minnesota, which was then in charge of and under the control of a bartender named Leon J. Rafidal, who was authorized to perform the ordinary duties pertaining to such a position. On the date named the respondent's intestate, Truman D. Merrill, entered the saloon and obtained a drink for which he did not pay. Merrill at the time was to some extent under the influence of liquor, and soon became involved in a wordy controversy with other persons who were present. This continued for from one-half to three-quarters of an hour, during which time the foul and profane language which ordinarily accompanies such conditions was freely used. One of the strangers finally asked Merrill to stop quarreling and buy the drinks for the crowd. This Merrill attempted to do, but Rafidal refused to serve the drinks, because Merrill had not paid for what he had already bought. The latter then began to abuse the barkeeper and was ordered to leave the saloon. This he refused to do, and finally Rafidal knocked Merrill to the floor, after which he came from behind the bar and dragged or carried him out of the saloon and left him on the sidewalk. About two hours later Merrill was found sitting on a walk near by and taken to the city lockup, where he soon after died. A post mortem disclosed that his death was due to the fracture of blood vessels in the brain, occasioned by a fracture at the base of the skull and of the nasal bones where they join the skull. This action was brought by the administratrix of Merrill's estate to recover damages

from the appellant, Coates, for the assault made by Rafidal while acting within the scope of his employment as appellant's bartender. The jury returned a verdict for $2,061.60 in favor of the plaintiff, and the defendant appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

The assault is admitted, and the evidence is ample to sustain a finding that the death of Merrill was the proximate result of the assault. The appellant claims that the assault was committed in a purely personal quarrel, and not in furtherance of the employer's interests. If this is correct, the plaintiff was not entitled to recover. Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. 793; Cofield v. McCabe, 58 Minn. 218, 59 N. W. 1005; Johanson v. Pioneer Fuel Co., 72 Minn. 405, 75 N. W. 719; Slater v. Advance Thresher Co., 97 Minn. 305, 107 N. W. 133. We are satisfied, however, that there is ample evidence to show that the assault was committed by Rafidal while acting within the scope of his employment and in an attempt to perform the duty which that employment imposed upon him to preserve order in the saloon. The complaint alleges that Rafidal, the agent of the defendant,

> In charge of said saloon and vested with the power of authority and the maintenance of peace and order in said premises, did, while in the line of his employment and within the scope of his authority, and in the discharge of his duties and the furtherance of his master's business, wilfully, violently, unlawfully, and negligently make an assault on the said Truman D. Merrill, etc.

The court charged the jury in substance that the plaintiff could recover if this was proven, but that if the assault was made "not while in the employment of his master, and not while he was engaged in looking after the interests of his master," there could be no recovery.

It was the duty of Rafidal to collect the money due for the liquor he sold to Merrill. It was also his duty to maintain peace and quiet in the saloon, and, if necessary in order to accomplish this, he had the right to eject Merrill from the saloon, using such force only as was reasonably necessary for that purpose. Merrill was noisy and offensive, and refused to leave the saloon. Rafidal might have taken

him by the arm and led him to the door, and had he done this no one would question that he would have been acting within the scope of his employment and in the performance of his duty to his employer. If in the course of such removal Rafidal had used unnecessary force and violence, it is equally clear that his employer would have been liable for the resulting damage. It appears that Merrill was an able-bodied man, and that Rafidal had just been informed that he had made threats against him. If it was necessary and desirable to eject Merrill, it may have seemed desirable as a preliminary matter to render him less able to resist. If the assault was committed for such a purpose, it must be considered as one act in the process of ejecting Merrill from the saloon. Rafidal on cross-examination testified that he believed that it was necessary to disable Merrill before attempting to put him out of the saloon.

> Q. Did you tell him to get out? A. I did. Q. How many times? * * * A. Two or three; twice or three times, and he wouldn't go. Q. Why did you tell him to go out? A. Because he was troublesome in there, quarrelsome. Q. Is that the reason? A. Yes, sir. Q. Did you tell him to get out because you wanted him to go out? A. Yes, sir. * * * Q. You couldn't reach an officer; if you wanted him out of there the only way you could get him out was to put him out. Is that true? A. Yes, sir. Q. And you wanted him out? A. I wanted him out. * * * Q. You thought that you dare not take hold of him to put him out in his active condition? A. Yes, sir. Q. You thought of that, did you? A. I did. Q. At the time you struck him? A. Yes, sir. * * * Q. You say that you did have it in mind that you couldn't put him out with safety to yourself until he was disabled. When did you have that in your mind? A. I had it in my mind all the time until after he fell down.

Of course, there is evidence which would tend to show that the blow was struck to revenge a personal insult; but the evidence quoted above amply justified the jury in coming to the conclusion that the assault was merely an incident in the process of ejecting a noisy and offensive patron, whose absence was necessary to the peace and quiet of the

saloon. If the jury found such to be the fact, it properly returned a verdict in favor of the plaintiff.

Error was assigned upon the refusal of the court to strike out an answer to a question asked by the court. The trial judge asked the witness Skinner the following question:

> Was there anything else said or done that under ordinary circumstances would have provoked a man to commit an assault, except the calling of the names which you have referred to? A. The calling, the getting of the drinks first and not paying for them, coming back and wanting more, and calling names and shaking his fist across the bar at him, and so forth, was the cause of the striking; was all that I could see—all that I did see.

No objection was interposed to the question at the time, but after several other questions had been asked and answered the defendant's counsel moved that the answer to this question be stricken out, and the court said: "It is too late now." It is more than probable that the court would have withdrawn the question, had an objection been interposed. The question called for the opinion of the witness; but the answer contained an enumeration of what had been said and done. The vice was in the form of the question, and not in the answer. The witness stated all that he had seen, and his conclusion therefrom could not have been particularly prejudicial. Counsel are not excused from objecting to a question merely because it is asked by the presiding judge. The court might properly have granted the motion to strike out the answer to the question, but no objection had been made to the question, and it was not reversible error to refuse to grant the motion. We cannot see that the answer was prejudicial, especially as it had no bearing upon the vital question as to whether the assault was committed for the purpose of rendering it easier to eject Merrill from the room.

The other assignments of error have been considered, and we find no errors of sufficient importance to justify a reversal of the order.

Order affirmed.