### STATE v. HARRY SOBELMAN.[1]

February 13, 1937.

No. 31,185.

[1] Reported in 271 N. W. 484.

*Benjamin M. Rigler,* for appellant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Ed J. Goff,* County Attorney, *Per M. Larson* and *John T. Gearty,* Assistant County Attorneys, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of the offense of having contributed to "the delinquent condition of a minor child" in that he unlawfully permitted the child to be and remain in his tavern, used and licensed for the sale of intoxicating liquors, a place where the presence of minors was prohibited under 2 Mason Minn. St. 1927, § 10140.   The

court denied his motion for new trial, and he appeals from that order as well as from the judgment and sentence of conviction.

The record abundantly establishes the following facts: That the child here involved was a girl only a trifle over 16 years at the time (March 11, 1936) the offense charged took place; that she had theretofore been adjudicated delinquent on account of other misconduct; that because of her delinquency she was under the jurisdiction of the juvenile court; that some nine days after the commission of the offense here involved she was committed to the State Home School for Girls at Sauk Center. It is not claimed that defendant was personally present at the time alleged in the complaint, or that she was there with his knowledge or express authority.

■ The determinative question, in the language of the court, is "whether the relevant law should be so construed as to warrant a verdict of 'guilty' upon evidence that the child was permitted to be in the place without a showing of immediate complicity on the part of defendant."

That the child's presence in the defendant's place of business was due to someone's "act" or "omission" within the meaning of 2 Mason Minn. St. 1927, § 8662, seems clear. That section provides, amongst other things, that any "person who by any act, word or omission encourages, causes or contributes to the neglected or delinquent condition of such [delinquent] child, when such act, word or omission is not by other provisions of law declared to be a felony, is guilty of a misdemeanor." And by virtue of § 10140, it is equally clear that defendant's place of business was one where such child had no right to be. That section provides:

"Whoever permits any person under the age of twenty-one years to be or remain in any dancehouse, concert saloon, place where intoxicating liquors are sold or given away, or any place of entertainment injurious to the morals, owned, kept, or managed by him in whole or in part, * * * shall be guilty of a misdemeanor, and be punished," etc.

The protection of the morals and general well-being of minors is obviously what the statute aims at. If one operating a place where

the vending of intoxicating liquor is the primary objective, especially such as the one operated by defendant (where music, drinking, and dancing prevail and where private profit is the compelling motive to make it attractive and alluring to the young) is to be exonerated from liability because he happens, whether by design or otherwise, to be absent at times when convenient to be away, then assuredly the very purpose of the law is frustrated and made for naught. The very spirit, intent, and purpose of the law, including as well the plain letter of it, repel the notion that any person so conducting his place of business can escape liability by absenting himself therefrom but leaving his servants and agents in charge to do as they please to his financial advantage, but at their own risk if caught in the game of violation. We think the rule stated in State v. Lundgren, 124 Minn. 162, 168, 144 N. W. 752, 754, Ann. Cas. 1915B, 377, applicable to the present case:

"The offense is one of the class where proof of criminal intent is not essential. The statute makes the act an offense, and imposes a penalty for violation of the law, irrespective of knowledge or intent. [Citing cases.] The statute is drastic in its terms, but the legislature was doubtless of the opinion that drastic measures are required to accomplish the purpose of enforcement of laws regulating the sale of intoxicating liquors. The law was in existence when the offense was committed. It was a notice to every man choosing to follow this line of business that he must control his own business and the men he employs in it, and that he is bound under penalty of the law to employ only men who will not commit crime in his name."

In State v. Bean, 199 Minn. 16, 20, 270 N. W. 918, we said: " 'It is the exclusive province of the legislature to declare what acts, deemed inimical to the public welfare shall constitute a crime, to prohibit the same, and impose appropriate punishment for a violation thereof. Judicial consideration of such enactments is limited to the inquiry whether the constitutional rights of the citizens are thereby violated or impaired.' 2 Dunnell, Minn. Dig. (2 ed.) § 2407. 'Statutes are to be so construed as to suppress the mischief and

advance the remedy, to promote rather than defeat the purpose of the legislature.'   6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8962."

■   Defendant contends that all liquor regulations existing prior to the enactment of Ex. Sess.. L. 1933-1934, c. 46 (3 Mason Minn. St. 1934 Supp. § 3200-21, *et seq.*) were repealed by implication as the new act purports to cover the field.   That contention we cannot sustain.   Before it can be said that a later act is intended as a substitute for the earlier, "there must be unmistakable intent manifested on the part of the legislature to make the new act a substitute for the old and to contain all the law on the subject; for mere similarity in the provisions of the two statutes is not enough to effect a repeal, even though the similarity may be such as to cause confusion or inconvenience."   6 Dunnell, Minn. Dig. (2 ed. & Supp. 1934) § 8926, and cases cited under note 15.

■   By § 8 of the 1933-1934 act (3 Mason Minn. St. 1934 Supp. § 3200-28) it is provided that "every licensee shall be responsible for the conduct of his place of business and for conditions of sobriety and order therein."   Clearly, then, it was defendant's duty to take cognizance of and to implicitly obey the requirements of both §§ 8662 and 10140.   The unlawful presence of a child in such place of business indicates the "conduct" thereof.   The licensee is "responsible for the conduct of his place."   The legislative intent as expressed in that section seems clear.   The licensee makes his own choice of servants and managers.   He and he alone chooses those with whom the conduct of the place is to be left, and for their conduct, within the field of their employment, he is responsible.   If we were to adopt defendant's construction of the statute the result would leave vendors of intoxicants in a position where violations in most instances would go unpunished.

If this young girl had received some physical injury due to a negligent act or omission of defendant's servants, his liability would of course follow, provided the harm came about while the servant was acting in the furtherance of his master's business and within the scope of his employment.   That being true respecting civil lia-

bility, how can anyone say that, in view of the statutes to which we have referred, criminal liability does not follow under circumstances such as we have here? Is it possible that physical hurt is more important to the individual and to society than the moral well-being of the child? Rather, so it seems to us, the very purpose of the law is to throw around children its protecting arm to the end that they may not be debauched.

■ Defendant also urges error in that the court refused to submit to the jury the question of whether this girl's delinquency was in any way affected by her presence in his tavern. He raises the point in this language:

"The jury could have found that said [naming girl] was fully delinquent before she went into [his tavern] and therefore, permitting her to be and remain [therein] would not add anything to her delinquency."

In support of these contentions he refers to certain phases of the record from which it appears that she was found to be delinquent in October, 1935, and was then committed to the Hennepin County Home School for Girls; that on January 31, 1936, she was paroled to her parents; that on March 9 she left home, "visiting a number of beer parlors that night and stayed all night with [naming a man]; and that on March 10 she again visited a number of beer parlors and that night again stayed with [the same man]; that on March 11 up to about four p. m. she was in" a named "beer parlor," not defendant's.

But defendant conveniently (to his own advantage) refrains from quoting other testimony in the case strongly indicating that this girl had been in defendant's place of business on many occasions, some before and some after the date mentioned in the complaint (March 11); that on this particular date she came into his tavern shortly after four o'clock in the afternoon and remained there until 11:30 that night; that she danced with numerous men, none of whom she knew; that the barmaid served beer and that this girl partook of from 10 to 12 glasses and became intoxicated; that music was furnished during this period, to which they danced, and that

she had requested the piano player to play certain pieces for the benefit of the crowd. It seems clear that the presence of this young girl under the circumstances here disclosed was one that defendant's servants could not have overlooked, although they deny having seen her on this occasion. If the court were to submit as a jury question the issue of whether this particular "act" or "omission" added to this girl's delinquency we would be reading something into the law that is not there. Her presence in defendant's tavern was forbidden. He, acting through his servants, violated the law by permitting her to be there. We think there can be no doubt that under such circumstances, he, as a matter of law, "contributed" to her delinquency.

Places of the type here involved afford recruiting stations for the criminal element, a breeding ground for moral laxity. This young girl has already gone a long way on a slippery road that may lead to a life of shame. The manner of operating taverns of defendant's type furnishes ample grounds for restrictive legislation. We do not choose to lend our aid to that kind of business by adopting forced or narrow construction of enactments having for their purpose and objective the curbing of evils necessarily flowing therefrom.

There are other assignments of error. They have been carefully considered, but we fail to find in them anything requiring discussion.

Order and judgment affirmed.

MR. JUSTICE PETERSON, having been attorney general when the appeal was taken, took no part in the consideration or decision of this case.