## CLARA ANDERSON v. CITY OF ST. PAUL AND OTHERS.[1]

May 7, 1948.

Nos. 34,163, 34,436.

[1]Reported in 32 N. W. (2d) 538.

*Paul C. Thomas,* for appellant.

*Bruce J. Broady,* City Attorney, and *Marshall F. Hurley,* Assistant City Attorney, for respondents.

PETERSON, JUSTICE.

This case came to the writer upon reassignment.

On these appeals plaintiff challenges as unconstitutional the provisions of an ordinance of the city of St. Paul prohibiting any woman except a licensee, wife of a licensee, or the manager of an establishment if the licensee is in the armed forces from dispensing intoxicating liquor behind a bar or counter in any establishment in which intoxicating liquor is sold at retail for consumption on the premises. Prior to the enactment of the ordinance plaintiff had been steadily employed tending bar in the barroom of the Frederic Hotel in St. Paul. Her duties consisted of dispensing intoxicating liquors behind the bar at retail sale for consumption on the premises. Because the ordinance prohibits plaintiff from working at her occupation as a bartender, she contends that it violates numerous constitutional provisions. We shall notice only those contentions which were argued, viz.:

(1) The ordinance deprives plaintiff of her property without due process of law in violation of Minn. Const. art. 1, § 7;

(2) It deprives her of her liberty and property without due process of law in violation of U. S. Const. Amend. art. XIV, § 1; and

(3) It deprives her of the equal protection of the laws in violation of U. S. Const. Amend. art. XIV, § 1.

On January 18, 1934, the city council of the city of St. Paul adopted ordinance No. 7537,[2] regulating the "on sale" retail liquor business, the title of which declares that it is "an emergency ordinance rendered necessary for the preservation of the public peace, health and safety." The ordinance regulates in detail the business in question. It prohibits certain activities and conduct such as dancing, singing, vaudeville entertainment, and keeping pool and billiard tables. Section 23(g) provides:

"Every licensee is hereby made responsible for the conduct of his place of business, and required to maintain order and sobriety in such place of business."

See, State v. Sobelman, 199 Minn. 232, 236-237, 271 N. W. 484, 486.

On May 11, 1945, the ordinance was amended by ordinance No. 8604, paragraph (e)[3] of which reads:

"No person under twenty-one (21) years of age shall be employed in any rooms constituting the place in which intoxicating liquors are sold 'on-sale'. *No woman except a licensee or wife of a licensee, or the manager of the establishment if the licensee is in the armed forces, shall dispense liquors behind a bar or counter in an establishment in which intoxicating liquors are sold 'on-sale'.*" (Italics supplied.)

The italicized portion is assailed here by plaintiff.

1. Since this action involves the constitutionality of a city ordinance, we point out, as we said in City of Duluth v. Cerveny, 218 Minn. 511, 516, 16 N. W. (2d) 779, 782, that the business of selling intoxicating liquor at retail for use as a beverage is peculiarly subject not only to state but to local regulation.

---

[2]Proceedings of St. Paul City Council (1934) p. 21.

[3]Proceedings of St. Paul City Council (1945) p. 156.

190

2. The due process clause of our state constitution is not more restrictive than the due process clause of the Fourteenth Amendment to the federal constitution. State v. Northwest Airlines, Inc. 213 Minn. 395, 7 N. W. (2d) 691 (affirmed, 322 U. S. 292, 64 S. Ct. 950, 88 L. ed. 1283, 153 A. L. R. 245, rehearing denied, 323 U. S. 809, 65 S. Ct. 26, 89 L. ed. 645). Hence, decision under the Fourteenth Amendment will dispose also of the questions raised so far as our state constitution is concerned.

3. In sweeping language, the Supreme Court of the United States has held that selling intoxicating liquor for beverage purposes is not a right protected by the Fourteenth Amendment to the constitution of the United States. Crane v. Campbell, 245 U. S. 304, 38 S. Ct. 98, 62 L. ed. 304; 30 Am. Jur., Intoxicating Liquors, § 205, and cases cited in note 1. In the Crane case the court said (245 U. S. 307, 38 S. Ct. 99, 62 L. ed. 309) :

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a State has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders *without violating the guarantees of the Fourteenth Amendment.*" (Italics supplied.)

Selling intoxicating liquor for use as a beverage is a mere privilege subject to the police power of the state. Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721, 37 L. ed. 599; Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6, 32 L. ed. 346; 30 Am. Jur., Intoxicating Liquors, §§ 19, 20, 275. Prohibiting the sale of intoxicating liquor for use as a beverage does not deprive any person of liberty or property and consequently does not constitute a violation of the due process clause of the Fourteenth Amendment. Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. ed. 205; Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642. Likewise, regulation of the privilege of selling intoxicating liquor for use as a beverage, imposing terms and conditions governing the business, involves no deprivation in a constitutional sense of the liberty or property of those engaged in the

business. See, 30 Am. Jur., Intoxicating Liquors, § 20, note 16. As Mr. Justice Field said in Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 15, 34 L. ed. 620, 624:

"* * * There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority."

In Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R. 821, we expressed views in full accord with those announced in the Crowley case.

4. Because prohibiting one from engaging in the business of selling intoxicating liquor does not constitute a deprivation of either liberty or property, state and local regulations prohibiting the employment of women in places where intoxicating liquor is sold for consumption on the premises do not deprive women of liberty or property. City of De Ridder v. Mangano, 186 La. 129, 171 So. 826; Bergman v. Cleveland, 39 Ohio St. 651; State v. Considine, 16 Wash. 358, 47 P. 755. In Fitzpatrick v. Liquor Control Comm. 316 Mich. 83, 25 N. W. (2d) 118, 172 A. L. R. 608, and Annotation, it was held that prohibiting or regulating the employment of women in such places did not deprive women of property without due process or deny them the equal protection of the laws.

In Goesaert v. Cleary (D. C.) 74 F. Supp. 735, a three-judge federal court (one judge dissenting) held in an action to enjoin the enforcement of the Michigan statute that the statute was valid as against objections that it violated the requirements of due process and equal protection, following the Michigan court's decision in the Fitzpatrick case, and stated that, while that decision was not controlling upon a federal court, it was "persuasive."

In the Annotation in 172 A. L. R. 620, following the Fitzpatrick case, the validity and construction of ordinances regulating the employment of women in places where intoxicating liquor is sold at

192

retail are elaborately considered. With the single exception of Brown v. Foley, 158 Fla. 734, 29 So. (2d) 870, the cases support the view that an ordinance such as the one here under consideration is valid. Referring to the Brown v. Foley case, the Annotation states: "The situation in Florida seems to be an anomalous one." 172 A. L. R. 626.

The authorities, with but a single exception, Matter of Maguire, 57 Cal. 604, 40 Am. R. 125, hold that prohibiting the employment of women as bartenders, waitresses, or otherwise in places where intoxicating liquor is sold to be drunk on the premises does not abridge any privilege or immunity of women as citizens of the United States in violation of the Fourteenth Amendment or deny to them the equal protection of the laws in violation of the equal protection clause thereof. Cronin v. Adams, 192 U. S. 108, 24 S. Ct. 219, 48 L. ed. 365; In re Considine (C. C.) 83 F. 157; Ex parte Felchlin, 96 Cal. 360, 31 P. 224, 31 A. S. R. 223; Foster v. Bd. of Police Commrs. 102 Cal. 483, 37 P. 763, 41 A. S. R. 194; City of Hoboken v. Goodman, 68 N. J. L. 217, 51 A. 1092; Annotations, 18 L.R.A.(N.S.) 657, 48 L. ed. 365, 49 L. R. A. 111; 30 Am. Jur., Intoxicating Liquors, § 335; 48 C. J. S., Intoxicating Liquors, § 39; 2 Cooley, Constitutional Limitations (8 ed.) p. 1342, note 1. The language used in the authorities cited is not confined to the precise objections there considered, but is broad enough, like that used in the Crane case, *supra,* to indicate that the prohibition of the employment of women in such places violates no provision of the Fourteenth Amendment, including the due process clause. That conclusion is derived from the premise that a person has no inherent or constitutional right to sell intoxicating liquor at all, much less to do so because one engaged in the business happens to be a woman. Because that is true, the authorities cited support the conclusion that such a prohibition involves no deprivation of liberty or property in violation of the due process clause. The liberty to engage in an occupation protected by the Fourteenth Amendment includes only the right "to engage in any of the common occupations of life." 2 Cooley, Constitutional Limitations (8 ed.) p. 824. As has been pointed out, selling intoxi-

cating liquor as a beverage is not such. "Nor can it be said that government interferes with or impairs any one's constitutional rights of *liberty* or of property, when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are, or may become, hurtful to society, and constitute, therefore, a business in which no one may lawfully engage." (Italics supplied.) Mugler v. Kansas, 123 U. S. 623, 662, 8 S. Ct. 273, 298, 31 L. ed. 205, 211. Accord, Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642, *supra.* We think it is clear that prohibiting the employment of women as bartenders is not unconstitutional as depriving them of liberty or property in violation of the due process clause of the Fourteenth Amendment, and that this conclusion finds support not only in the authorities expressly so holding, but also, for the reasons stated, in the decisions of the Supreme Court of the United States and other courts sustaining such prohibition against other constitutional objections.

Matter of Maguire, *supra,* was decided under a constitutional provision reading that "No person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation, or profession," and has been in effect overruled by subsequent decisions. People v. Jemnez, 49 Cal. App. (2d) Supp. 739, 741, 121 P. (2d) 543, 544.

5. Equal protection of the laws is claimed to be denied here, for the reasons that the ordinance in the first instance discriminates against women generally by according to men and by denying to women the privilege of being employed as bartenders in dispensing intoxicating liquors at retail for consumption on the premises where it is sold, and, in the second instance, by discriminating in favor of some women against all others by permitting some to be bartenders in such places and denying the privilege to all others.

The separate clauses of the Fourteenth Amendment guaranteeing due process of law and equal protection of the laws refer to separate rights. The purpose is to require equal protection as well as due process. 2 Cooley, Constitutional Limitations (8 ed.) p. 824. The requirement of equality has its roots in such universally accepted

maxims as: "All men are equal before the law"; "This is a government of laws and not of men"; "No man is above the law," and the like. See, Truax v. Corrigan, 257 U. S. 312, 332, 42 S. Ct. 124, 129, 66 L. ed. 254, 263, 27 A. L. R. 375.

6. Equal protection of the laws applies to regulation of occupations which may be entirely prohibited as well as to those which are inherently lawful. As between the selling of intoxicating liquor and other less harmful callings, there may be discrimination against the former, but there can be none as between persons engaged in the business. Glicker v. Michigan Liquor Control Comm. (6 Cir.) 160 F. (2d) 96; Francis v. Fitzpatrick, 129 Conn. 619, 30 A. (2d) 552, 145 A. L. R. 505; State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 67 L. R. A. 70, 2 Ann. Cas. 92; 30 Am. Jur., Intoxicating Liquors, § 42.

7. It may be said generally that equal protection of the laws means that the rights of all persons must rest upon the same rule under the same circumstances. It requires equality of application of the laws; that all similarly circumstanced be treated alike. Louisville Gas & Elec. Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. ed. 770; Montgomery Ward & Co. Inc. v. Commr. of Taxation, 216 Minn. 307, 12 N. W. (2d) 625; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412. But equality does not mean ironclad uniformity. As said in Whitney v. California, 274 U. S. 357, 369, 47 S. Ct. 641, 646, 71 L. ed. 1095, 1103 (vacating 269 U. S. 530, 46 S. Ct. 22, 70 L. ed. 396):

"It is settled by repeated decisions of this Court that the equal protection clause does not take from a State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary; and that one who assails the classification must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

The rule could not be otherwise. "The exercise of the legislative process necessarily involves classification." Lyons v. Spaeth, 220

Minn. 563, 571, 20 N. W. (2d) 481, 485, 162 A. L. R. 1041. Inability to classify for legislative purposes would leave the legislature helpless to adapt legislation to the varying needs and circumstances of society and to cope with evils as they actually exist.

The classification permissible under the equal protection clause of the Fourteenth Amendment must be based upon differences in the subjects classified and must bear some fair and substantial relation to the objects of the legislation. The difference between the subjects need not be great, and if any reasonable distinction between the subjects as a basis for classification can be found, the legislative classification should be sustained. A "narrow" distinction will suffice. New York Rapid Transit Corp. v. City of New York, 303 U. S. 573, 58 S. Ct. 721, 82 L. ed. 1024, rehearing denied, 304 U. S. 588, 58 S. Ct. 939, 82 L. ed. 1548; Montgomery Ward & Co. Inc. v. Commr. of Taxation, *supra.*

8. A distinction for purposes of legislative classification based on sex does not deny equal protection where it bears some reasonable relation to the object sought to be accomplished by the legislation. Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; 12 Am. Jur., Constitutional Law, § 496. Speaking for the court in West Coast Hotel Co. v. Parrish, 300 U. S. 379, 400, 57 S. Ct. 578, 585, 81 L. ed. 703, 713, 108 A. L. R. 1330, Mr. Chief Justice Hughes summarized the applicable rules in the following language:

"* * * This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' There is no 'doctrinaire requirement' that the legislation should be couched in all embracing terms. * * * *This familiar principle has repeatedly been applied to legislation which singles out women, and particular classes of women, in the exercise*

*of the State's protective power.* * * * Their relative need in the presence of the evil, no less than the existence of the evil itself, is a matter for the legislative judgment." (Italics supplied.)

The distinction here involved of permitting men to be employed as bartenders and prohibiting women from being so employed rests upon substantial differences between the sexes and bears a just and reasonable relation to the objects to be accomplished by the ordinance. The ordinance is a *police regulation of the retail "on sale"* liquor business adopted to preserve the public peace, health, and safety. Just as legislation for the protection of women is permissible (West Coast Hotel Co. v. Parrish, *supra*), so, likewise, legislation may exclude women from certain employments. As said by Cooley (2 Cooley, Constitutional Limitations [8 ed.] p. 1342) : "Some employments, for example, may be admissible for males and improper for females, and regulations recognizing the impropriety and forbidding women engaging in them would be open to no reasonable objection." In note 1 to the text are cited cases holding that forbidding the employment of women in selling intoxicating liquors does not deny them equal protection. The rule stated is supported by all the authorities, with the single exception of the Maguire case, *supra*, to which we have already alluded. In re Considine, 83 F. 157; People v. Jemnez, 49 Cal. App. (2d) Supp. 739, 121 P. (2d) 543; Foster v. Bd. of Police Commrs. 102 Cal. 483, 37 P. 763, 41 A. S. R. 194; Fitzpatrick v. Liquor Control Comm. 316 Mich. 83, 25 N. W. (2d) 118, 172 A. L. R. 608; City of Hoboken v. Goodman, 68 N. J. L. 217, 51 A. 1092.

Prohibiting women from being bartenders and permitting men only to be such tends to accomplish the purpose of the ordinance. It is a matter of common knowledge that the owner of an establishment where intoxicating liquor is sold at retail for consumption on the premises where it is sold in the very nature of things cannot always be physically present to preserve peace and good order, and that in his absence those functions are delegated to his bartender as his servant in charge thereof. Decision in cases like State v. Sobelman, 199 Minn. 232, 271 N. W. 484; Merrill v. Coates, 101

Minn. 43, 111 N. W. 836; Curran v. Olson, 88 Minn. 307, 92 N. W. 1124, 60 L. R. A. 733, 97 A. S. R. 517; Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803, 85 A. S. R. 446; and Dice v. Sherberneau, 152 Mich. 601, 116 N. W. 416, 16 L.R.A.(N.S.) 765, illustrate the likelihood of disorder in such establishments, because patrons when intoxicated are apt to become boisterous, quarrelsome, pugnacious, disorderly, and otherwise unrestrained in their conduct, and show the need for the presence of a man to effectually cope with such situations. As said in the Merrill case (101 Minn. 45, 111 N. W. 837):

"It was the duty of Rafidal [the bartender] to collect the money due for the liquor he sold to Merrill [a patron]. It was also his duty to maintain peace and quiet in the saloon, and, if necessary in order to accomplish this, he had the right to eject Merrill from the saloon, using such force only as was reasonably necessary for that purpose."

We think that there is factual basis for the city council's determination that there is a difference between men and women with respect to their ability and suitability to maintain peace and good order in such places. This, we think, is true in spite of the oft-asserted claim that as a matter of medical fact females are the stronger and not the weaker sex. And it is no less true because occasionally some woman demonstrates that she has the physical strength and disposition to be a so-called "bouncer."

The suggestion that the ordinance is unreasonable because of the fact that the city of St. Paul has an able police department is equivalent to saying that it is unreasonable to require the liquor business to police itself and not burden the public with the problems which the business itself creates. That notion has been generally rejected as wholly untenable. See, State v. Sobelman, *supra.* Why should the police department of St. Paul be required to suppress evils which the liquor business itself can prevent?

Furthermore, there is basis for holding that the employment of women as bartenders is opposed to sound public policy. See, In re Carragher, 149 Iowa 225, 128 N. W. 352, Ann. Cas. 1912C, 972, 31

L.R.A.(N.S.) 321. Permitting the employment of women as bartenders encourages the presence of women in drinking places as patrons thereof. It is needless to add that thereby drinking among women would be encouraged and that such a result is against the public interest.

9. Finally, plaintiff urges that if the ordinance is not unconstitutional upon the grounds already considered it should be so held for the reason that the exception permitting certain women to be employed as bartenders and prohibiting all others from being so employed violates the requirements of equal protection of the laws by granting the privilege to the former and denying it to the latter.

Equal protection of the laws does not prevent the exemption of particular persons or classes if the exemption rests upon a reasonable classification. Broad River Power Co. v. Query, 288 U. S. 178, 53 S. Ct. 327, 77 L. ed. 685; State v. Marcus, 210 Minn. 576, 299 N. W. 241; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412. Exemption involves subclassification, which so far as concerns its constitutionality is but an additional classification and is governed by the principles generally applicable to that matter. See, State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465.

Here, the distinction upon which some women are included and others excluded rests upon relation. The city and the female licensees included among those permitted to act as bartenders stand in the relation of licensor and licensee. A male licensee and his wife occupy the relation of husband and wife. A licensee in the armed forces and his female manager bear to each other the relation of principal and agent. Those relationships distinguish the female members thereof from other women.

.Relation is a proper basis for classification if it bears some substantial relation to the objects of the legislation. "Classification" involves a determination of the relation between things and the grouping of some in classes because they agree with one another in certain particulars and differ from others in those particulars. See, Webster's New International Dictionary (2 ed.) 1947; Tanner v.

Little, 240 U. S. 369, 36 S. Ct. 379, 60 L. ed. 691; C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 514, 297 N. W. 9, 16; Lyons v. Spaeth, 220 Minn. 563, 571, 20 N. W. (2d) 481, 485, 162 A. L. R. 1041.

Much of our law, as Dean Pound has pointed out and as legal subject titles show, consists of principles governing particular relations such as husband and wife, master and servant, parent and child, principal and agent, vendor and purchaser, and the like, and not of rules having no regard to the relations to which they are to apply. We speak of the law of "domestic relations," which includes a group of different legal relations. Relations point to differences which by universal consent distinguish the members thereof from others and which make special rules appropriate to govern them. No one would contend that the relation of parent and child should be governed by the principles applicable to vendor and purchaser, and so on. In his volume, Interpretations of Legal History, Dean Pound says (p. 56):

"If we must find a fundamental idea in the common law, it is relation, not will. If the Romanist sees all problems in terms of the will of an actor and of the logical implications of what he has willed and done, the common-law lawyer sees almost all problems—all those, indeed, in which he was not led to adopt the Romanist's point of view in the last century—in terms of a relation and of the incidents in the way of reciprocal rights and duties involved in or required to give effect to that relation."

He says that "the idea of relation" is "a staple juristic conception"; that "On every side we think not of transactions but of relations" (p. 57), and that "the idea of relation" is "the central idea in our traditional mode of juristic thought" (p. 58). In this connection experience is paramount to pure theory. As Mr. Justice Holmes said in Patsone v. Pennsylvania, 232 U. S. 138, 144, 34 S. Ct. 281, 282, 58 L. ed. 539, 543: "The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class." Relation of the members distinguishes the class. In certain cases the relation of the members of a class may be such as to justify

the imposition of liability without fault. New York Cent. R. Co. v. White, 243 U. S. 188, 204, 37 S. Ct. 247, 253, 61 L. ed. 667, 675, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; see, 12 Am. Jur., Constitutional Law, § 662. Relation may afford a basis for legislation appropriate not only for the regulation of the rights and liabilities of the members of a class *inter se,* but also in other situations where relation is germane as being in furtherance of a justifiable policy, as in Magoun v. Illinois T. & S. Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. ed. 1037, where the relation of the transferees of property to the decedent or the lack thereof was held to be a proper basis for determining the rates of graduated inheritance taxes. See, 28 Am. Jur., Inheritance, Estate, and Gift Taxes, §§ 25-27.

The relations here of the women permitted to tend bar and those prohibited from doing so constitute a valid basis for the classification adopted in the ordinance here in question. Implicit in the licensing of the business of selling liquor at retail for consumption on the premises is the supposition that the licensing authority will be able to control the business by means of regulations. See, McPherson v. State, 174 Ind. 60, 90 N. E. 610, 31 L.R.A.(N.S.) 188; 53 C. J. S., Licenses, § 2, p. 450. The relation of licensor and licensee existing between the city and female licensees not only distinguishes such licensees from other women, but affords the city as licensor such control over their conduct of their business as to achieve the objects of the ordinance. Because that is true, it constitutes a valid basis for classification. People v. Jemnez, 49 Cal. App. (2d) Supp. 739, 121 P. (2d) 543; Fitzpatrick v. Liquor Control Comm. 316 Mich. 83, 25 N. W. (2d) 118, 172 A. L. R. 608. It should be added, as the record shows, that the number of women licensees is negligible, and that they cater to neighborhood trade, where the evils at which the ordinance is aimed are not prevalent. Under the West Coast Hotel Co. case, 300 U. S. 379, 57 S. Ct. 578, 81 L. ed. 703, 108 A. L. R. 1330, *supra,* it is a case simply of excluding a situation where the evil is not felt.

The wife of a licensee is in no sense an employe. Of course she could be excluded the same as other women. City of De Ridder v. Mangano, 186 La. 129, 171 So. 826. But, because of her relationship to her husband, she may be included in those permitted to act as a bartender. Presumably her interest is that of her husband. It is reasonable to assume that a male licensee of a place selling intoxicating liquor "on sale" has such control over his wife because of their relationship and that she has such financial interest in the lawful conduct of his business as to furnish sufficient safeguard against any violation of regulations imposed upon the business by public authority. Fitzpatrick v. Liquor Control Comm. *supra*. Because that is true, the classification here involves no violation of the requirements of equal protection. City of Hoboken v. Goodman, 68 N. J. L. 217, 51 A. 1092; People v. Jemnez, *supra*. As said in the last cited case (49 Cal. App. [2d] Supp. 743, 121 P. [2d] 545):

"* * * As to the wife of a licensee, she is more nearly in the position of a licensee than in that of an employee and her presence may fairly be considered to be a restraint upon impropriety. 'A mere employee would not have the same incentive to prevent improprieties that either a licensee or the wife of a licensee would naturally have. Furthermore, the legislature may well have concluded that it would be an unwholesome influence upon the women themselves, the general public, and upon our young people, to permit women generally to act as bartenders. The precise classification here involved was approved in City of Hoboken v. Goodman, supra."

What has been said concerning the wife of a licensee is true also of a manager of a licensee who is in the armed forces. A manager is no ordinary employe. "The designation of 'Manager' implies general powers." Whipple v. Prudential Ins. Co. 222 N. Y. 39, 46, 118 N. E. 211, 213. A manager, as we said of a "managing agent" in Hatinen v. Payne, 150 Minn. 344, 346, 185 N. W. 386, 387, is vested "with powers requiring the exercise of an independent judgment and discretion." He is truly the alter ego of his principal. In pointing out the distinction between an ordinary *employe,* such as the female

waitresses permitted here in drinking establishments, and an *agent,* such as a manager here involved, 2 Am. Jur., Agency, § 7, states:

"* * * The vital point of distinction is that the agent is not only employed by the principal, but represents him as well. He is the business representative of the principal and acts not only for the principal, but in the place and instead of the principal."

The distinction between a manager and other women, including those employed as waitresses, is fundamental. It bears upon responsibility and control. The assumption underlying the ordinance is that the relationship of owner and managing agent justifies the belief that the agent will faithfully discharge the duties of the owner and thus comply with the ordinance. There is no suggestion here that the assumption lacks factual basis. Such an assumption is reasonable. Such an agent has ample authority to do whatever is necessary to comply with the ordinance, including the hiring of suitable employes for such purpose, the same as the licensee, and presumably he would exercise it for such purpose. The fact that such an agent is a woman is no reason for believing that she would be remiss in discharging the duties undertaken by her. The common experience of successful and faithful operation of not only local, but of far-flung nationwide and world-wide business enterprises, some of which are subject to local licensing, by managing agents, including both men and women, for owners as distant from them as are the licensor-owners in the armed service from their female managers affords spectacular proof that there may be complete identity between principal and agent with respect to the operation of the former's business by the latter, regardless of the sex of the agent and of the fact that the business is one subject to licensing. There is no reason why the city council in adopting the ordinance in question should not act upon an assumption so verified by experience. While one of the objects of the provision relative to female managers of licensees in the armed forces is to protect men in the armed forces in their license privileges, that feature is incidental and, so far from being objectionable, is in conformity with the universal opinion that the interests at home of men away in the armed forces should be pro-

tected. See, Boone v. Lightner, 319 U. S. 561, 63 S. Ct. 1223, 87 L. ed. 1587.

It is no answer to say that the work done by bartenders and waitresses is not essentially different, for the reason that the work of both is concerned with a phase of selling intoxicating liquors, the one with mixing and dispensing and the other with serving. Such an argument ignores the purpose of the ordinance and the basis of the classification. The classification rests upon real distinctions which bear a fair and substantial relation to the objects to be achieved by the ordinance.

The case of Brown v. Foley, 158 Fla. 734, 29 So. (2d) 870, overruling Nelson v. State, 157 Fla. 412, 26 So. (2d) 60, is cited contra and is urged upon us as not only announcing the correct rule, but as indicating the tendency of judicial thought. It is opposed to what we deem to be sound and settled principles, and therefore we refuse to follow it. As has been said, the situation in Florida is regarded as "anomalous." 172 A. L. R. 626.

10. Determination that the ordinance provides for reasonable classification in distinguishing between men and women with respect to the right to engage in the occupation of bartender and between women with respect to that right by excluding entirely all women except those mentioned settles the question whether the ordinance is a reasonable one. Our approach to decision of the question should be an objective one. Even where we might think that the arguments against the policy, expediency, wisdom, and propriety of the ordinance outweigh those in favor of it, it is our duty to sustain the ordinance if there is any reasonable basis for it. As said in State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759, we cannot disturb a determination simply because we do not agree with it. The regulation of the business of selling intoxicating liquor at retail is one peculiarly subject to the discretion of those charged with the regulatory function. Here, as in other cases, we should remember what is said in 37 Am. Jur., Municipal Corporations, § 180:

"* * * For example, a municipal corporation possesses a wide discretion in enacting legislation for the promotion and perpetuation of the general welfare of the community and for the protection and preservation of the public health or safety. The council's discretion, and not the court's, must control. *In such matters the municipal authorities are usually better judges than the courts,* and their attempted exercise of discretion can be controlled only after abuse in cases of action clearly unreasonable and oppressive." (Italics supplied.)

Furthermore, it is not permissible for the courts to inquire into the motives of the city council in enacting the ordinance for the purpose of assailing its validity. Higgins v. Lacroix, 119 Minn. 145, 137 N. W. 417, 41 L.R.A.(N.S.) 737. The motives of persons interested in securing the enactment of the ordinance are wholly immaterial. That sort of inquiry is forbidden. As said in 37 Am. Jur., Municipal Corporations, § 182:

"It has been held that the validity of an ordinance is not affected by the motives of persons who press for, and by their efforts, procure its passage. An ordinance will not be declared void merely because it was enacted at the solicitation of persons residing in the vicinity of certain premises and solely in their behalf as a local and special regulation."

Our conclusion is that the ordinance in question is not objectionable upon any ground urged here.[4] The classification made by the city council was one within its province. In this, as in other cases, the court, keeping within its own province, intimates no opinion as to the expediency or wisdom of the ordinance.

[4]The authorities supporting the views herein expressed include not only those 40 and 50 years old, but some decided within the last year or so and one decided after the oral argument. People v. Jemnez, 49 Cal. App. (2d) Supp. 739, 121 P. (2d) 543, *supra,* was decided on January 27, 1942, and Fitzpatrick v. Liquor Control Comm. 316 Mich. 83, 25 N. W. (2d) 118, 172 A. L. R. 608, *supra,* on December 2, 1946. Goesaert v. Cleary (D. C.) 74 F. Supp. 735, *supra,* was decided on November 20, 1947, about two weeks after oral argument here. The Annotation at 172 A. L. R. 620 was published in 1948.

Affirmed.

LORING, CHIEF JUSTICE (dissenting).

I find myself in disagreement with the result reached by the majority. As I view the record and the contentions of counsel, the important question presented is not the constitutional question so elaborately treated in the majority opinion, but the question whether, as distinguished from the constitutional problem, the ordinance is unreasonable, oppressive, and discriminatory, a question touched upon but lightly by the majority and wholly ignored by the brief of defendants, although it was discussed at considerable length by both counsel upon the oral argument. Plaintiff definitely raised the question on pages 20 and 21 of her brief. In my opinion, if the question of reasonableness were considered and rightly decided, the constitutional question would never be reached. The question of reasonableness of an ordinance is treated differently from the question of constitutionality of a statute. The former bears on whether or not a local legislative body has reasonably exercised general powers delegated by statute or charter; the latter on whether a limitation in the constitution, the organic law of the land, has been contravened.

It is established law, since the case of Kruse v. Johnson [1898] 2 Q. B. 91, 99, that:

"* * * If, for instance, they [bylaws] were found to be partial and unequal in their operation as between different classes; if they were manifestly unjust; if they disclosed bad faith; if they involved such oppressive or gratuitous interference with the rights of those subject to them as could find no justification in the minds of reasonable men, the Court might well say, 'Parliament never intended to give authority to make such rules; they are unreasonable and ultra vires.' "

The general rule so formulated prevails throughout the United States and has been adopted by this court. State v. Houston, 210 Minn. 379, 298 N. W. 358; Evison v. C. St. P. M. & O. Ry. Co. 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434; Orr v. City of Rochester, 193 Minn. 371, 258 N. W. 569; Sverkerson v. City of Minneapolis,

204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944; Village of Golden Valley v. M. N. & S. Ry. 170 Minn. 356, 212 N. W. 585.

In the Houston case the court said (210 Minn. 383, 298 N. W. 360) :

"* * * Where the power to legislate upon a given subject is granted, as it is here, and the mode of its exercise and the details of such legislation is not prescribed, an ordinance passed pursuant thereto must be a reasonable exercise of the power or it will be pronounced invalid."

In the Village of Golden Valley case the court said (170 Minn. 358, 212 N. W. 586) :

"* * * It is the rule that an ordinance may be declared void when, from its inherent character or from competent proof, its operation is shown to be unreasonable, unless the contrary appears from the text thereof or is established by proper evidence."

In 37 Am. Jur., Municipal Corporations, § 157, the rule as to the requirement of reasonableness in ordinances is stated as follows:

"It is settled by the concurrence of almost innumerable authorities that a municipal ordinance is required *not only to be constitutional, but to be reasonable as well,* where it is enacted under general charter powers, general state statutes affecting municipalities, or other general or implied grant of power. The ordinance must, according to the explicit statement of many of the courts, attain reasonableness by *being fair, general, and impartial in operation,* not in conflict with common right, and *not unduly oppressive upon individuals. Even though the reasonableness of a statute is not subject to question unless the organic law has been violated, the reasonableness of a municipal ordinance enacted under general authority is subject to examination and attack,* because where a municipal corporation has merely been granted a general power to enact ordinances of a regulatory nature in behalf of the general welfare, the power so granted is *not coterminous, within the corporate limits, with the police power that rests in the hands of the legislature of the state.* An ordinance passed under such grant of power may be clearly unreasonable, or so arbitrary, oppressive, or partial, as to raise

the presumption that the legislature never intended to confer the power to pass it, thus justifying a setting aside of the ordinance as a plain abuse of authority." (Italics supplied.)

Ordinances enacted under the general welfare clauses of city charters or those permitting regulation of the liquor traffic must bear some reasonable relation to the public health, safety, or morals or to the furtherance of such regulation. They must not be arbitrary or discriminatory. 30 Am. Jur., Intoxicating Liquors, § 38, notes 17 to 20, inclusive.

As said in 37 Am. Jur., Municipal Corporations, § 158:

"* * * It is common, however, for certain classes of citizens, those engaged in a particular business, to appeal to the Government—National, state, or municipal—to aid them by legislation against another class of citizens engaged in the same business, but in some other way. This class legislation, when indulged in, seldom benefits the general public, but nearly always aids a few for whose benefit it is enacted, not only at the expense of the few against whom it is ostensibly directed, but also at the expense and to the detriment of the many for whose benefit all legislation should be, in a republican form of government, framed and devised. This kind of legislation ordinarily receives no encouragement at the hands of the courts, and will be upheld only where it is strictly within the legitimate power of the municipal legislature. * * *

* * * * *

"A classification in a municipal ordinance must be based on natural distinguishing characteristics and must bear a reasonable relation to the object of the legislation, must be founded upon distinctions reasonable in principle and having just relation to the object sought to be accomplished, and must be based upon some substantial difference between the situation of such class or classes and other individuals or classes to which it does not apply."

Accordingly, the courts will review the question as to reasonableness of an ordinance, and if an ordinance passed under a general power is found unreasonable will declare it void as a matter of law

(Evison v. C. St. P. M. & O. Ry. Co. 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434), for in every power given to a municipal corporation to pass ordinances there is an implied restriction that ordinances will be reasonable, consistent with the general law and policy of the state, uniform in their operation, and promotive, rather than destructive, of lawful businesses and occupations. 2 McQuillin, Municipal Corporations (Rev. 2 ed.) § 761.

There is no contention by the city that there is any constitutional or statutory provision that takes this case out of the general rule. I discover nothing in M. S. A. 340.11, subds. 4 and 10, cited by it on the oral argument, which specifically authorizes such an ordinance. The charter of defendant city (§ 127 B3) authorized the council to "license and regulate * * * all persons * * * dealing in or disposing of spirituous, vinous, malt or fermented liquors and all places in which the same are dealt in." This is a general clause, not a specific authorization of the ordinance under consideration.

In 2 McQuillin, Municipal Corporations (Rev. 2 ed.) § 762, the rule is stated:

"* * * So where the mode of the exercise of a power expressly granted is not prescribed, courts will assume to determine whether the provisions of the ordinance respecting the mode adopted are reasonable, for in no event will an arbitrary and unreasonable exercise of the power conferred be upheld by the judiciary."

Orr v. City of Rochester, 193 Minn. 371, 258 N. W. 569; Evison v. C. St. P. M. & O. Ry. Co. 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434. Measured by these standards, the part of the ordinance here under consideration falls outside the limits of reasonableness. We should take judicial notice of the transformation of the "on sale" liquor business which has occurred in the years since the repeal of the prohibition amendment. That change is so pronounced and of such common knowledge as to be the subject of judicial notice and to be obvious even to a total abstainer. What may have been justifiable 40 or 50 years ago under the conditions then existing may be wholly unreasonable now. City of Shreveport v. Shreveport Ry. Co. (5 Cir.) (1930) 38 F. (2d) 945, 69 A. L. R. 340; 37 Am. Jur., Municipal Cor-

porations, § 173, note 3. Most of the cases relied upon by the majority are 40 years old or more. Formerly, barrooms catered only to men. Women of good character did not patronize the open saloon. To do so would have besmirched their reputations. Now, in many cases, as shown by the evidence herein, women form a major part of the patronage of the barroom. Hotels and clubs have women's cocktail lounges. Women of good character not only patronize bars, but are employed as waitresses, hostesses, and bartenders. No one in this state has been heard to say that their employment in such establishments has been a hazard to public morals or health or to the regulation of the liquor business. The general impression and the testimony of the police is to the contrary. In the case at bar, the evidence is all one way, to the effect that barrooms are more orderly with women behind the bar, which is a high compliment to the men of St. Paul. The police and the proprietors agree as to that. Certainly, the presence of women behind the bar, as distinguished from those otherwise employed in the barroom, cannot be said to be a menace to public morals.

The promoters and supporters of the ordinance here under consideration admit with commendable candor that, while they do not like women behind the bar, they are interested chiefly in providing jobs for men. They announced that they anticipated a period when many men would be laid off in industry. They refused to say that women behind the bar are a menace to public welfare or morals. In my view, the ordinance unreasonably discriminates against women serving liquor from behind the bar in favor of men and of those women who are free to accept employment in any of the other capacities in which they are commonly employed in a barroom, including the mixing and serving of liquor. Certainly, women are as capable of mixing and serving drinks as men are. How they can be any more of a threat to morals when serving liquor from behind the bar than in front of it or elsewhere in the room is impossible to conceive. It is true that legislation does not need to cover a whole field, but if failing to do so results in unreasonable discrimination

the theory of partial coverage should not be allowed to disguise discrimination, especially in the case of ordinances.

It is possible that an intelligent and efficient woman behind the bar may attract more patronage than a man, but that is legitimate, for a duly licensed and legally operated barroom is not an unlawful business. The proprietor is justified in seeking to attract business by legitimate means. True, a barroom is operated as a licensed privilege, but, the license being granted, the business becomes lawful. Most of the cases which discuss it as a mere privilege are those which have under consideration the issuance or cancellation of a license. There is no magic in applying the word "privilege" to it. To do so does not lift it beyond the pale of reasonable regulation or place it within the realm of arbitrary power; nor does doing so support an ordinance with a reasonable foundation for discrimination against women in favor of men.

I do not follow the reasoning of the cases cited by defendants. Three of them, including Goesaert v. Cleary (D. C.) 74 F. Supp. 735, involve statutes, not ordinances, and the fourth has been overruled. In Michigan,[5] the people amended the constitution in order to allow the legislature to establish a liquor control commission, which should have "complete control" of the liquor traffic in that state. The legislature did so and provided by statute that in certain cities no women except the wife or daughter of a male owner should be licensed as bartenders. Michigan has had a long legislative history, originating in pre-prohibition days, forbidding the employment of women as bartenders, at one time forbidding women from resorting to saloons for drinks. The Michigan court, conceding the discrimination against women, considered that the constitution and activating statutes indicated a purpose broad enough to allow the legislature to discriminate against them. It went further, and in seeking justification for the discrimination postulated that women would be less able than men to determine whether customers were minors or intoxicated to such an extent as to fall within the prohibition against

[5]See, Fitzpatrick v. Liquor Control Comm. 316 Mich. 83, 25 N. W. (2d) 118, 172 A. L. R. 608.

sale of intoxicants to them. We have no such constitution or statute, and I do not think the postulated inability to discriminate is sound. Certainly, a woman's perceptions are as keen as a man's in this respect. The Michigan courts were discussing the validity of a statute under broad constitutional provisions relating to liquor traffic. Even on that question, the dissent of Judge Picard in Goesaert v. Cleary (D. C.) 74 F. Supp. 735, a federal three-judge district court case, voices a very persuasive argument.

The California case (People v. Jemnez, 49 Cal. App. [2d] Supp. 739, 121 P. [2d] 543) is from an intermediate court, where there was under consideration an act of the legislature which forbade women to be employed in mixing alcoholic beverages "on the premises." The court held flatly that the legislative classification discriminating against all women on the premises in mixing drinks was reasonable. It said that the legislature may have concluded that it might be an unwholesome influence on the women so employed. There is, perhaps, more force to this argument than to any other, but it loses its force when applied merely to the dispensing of drinks from behind the bar, as distinguished from employment elsewhere in the barroom. In New Jersey (City of Hoboken v. Goodman, 68 N. J. L. 217, 51 A. 1092), the court regarded women bartenders as more likely than men to induce vice and immorality. The evidence in the case at bar is wholly to the contrary. In Brown v. Foley, 158 Fla. 734, 29 So. (2d) 870, 871, the supreme court of Florida overruled Nelson v. State, 157 Fla. 412, 26 So. (2d) 60, and said:

"In our opinion this ordinance is unreasonable as applied to this appellant. It recognizes that women may frequent bars and engage in every practice as men save and except that they shall not *serve liquor by the drink over the bar* notwithstanding they may mix and serve it otherwise."

The principal ground upon which the majority justify the discrimination against women as mixers of drinks behind the bar is that they do not consider them good "bouncers." They say they do not have the "physical strength or disposition" to keep order in the

barroom. Even if this were true, a complete answer to that, if proprietors desire to have women bartenders and also to hire male bouncers, is that to prohibit such proprietors from so doing is an unjust discrimination against women. Women have always accomplished more by diplomacy than men by violence. Doubtless, women in the barroom, as the evidence here indicates, would minimize breaches of the peace. After all, St. Paul has a police force famous for its efficiency. The employment of women behind the bar has gone on in St. Paul for many years, as witness the employment of plaintiff for six years in that capacity after she had had four years of service in the barroom. There is no contention that public health or morals or the regulation of the traffic has suffered therefrom, and certainly no emergency has arisen to call for action by the city council. The evidence is all to the contrary. If physical and mental capacity is to be the basis for classification of those eligible to tend bar, some other distinction than that of sex will have to be found. Under the ordinance, Mr. Milquetoast and Mr. Wimple, but not Tugboat Annie nor Mrs. Wimple nor Emma Maddon,[6] could qualify to assume the heavy responsibilities incident to mixing drinks behind the bar. I fear that this case will be regarded as an invitation to pressure groups to seek to bar women from jobs which they desire to preserve for men and that it will result in unjust discrimination in other vocations.

I am of the opinion that the part of the ordinance under consideration is unreasonable and void because it serves no purpose in protecting public health, morals, or safety or in the reasonable furtherance of the regulation of the liquor business. It is not based on any reasonable classification in its discrimination against women bartenders.

JULIUS J. OLSON, JUSTICE (dissenting).

I am in agreement with the Chief Justice.

---

[6]Emma Maddon was a streetcar conductor in New York City who, according to recent news dispatches, ejected from her car, singlehanded, a belligerent passenger who refused to pay his fare.

Thomas Gallagher, Justice (dissenting).

I concur in the views expressed by Mr. Chief Justice Loring.

